## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JULIE ANN BROSTROM,
*Defendant-Appellant.*

Multnomah County Circuit Court
030432016; A123965

167 P3d 460

Rebecca A. Duncan, Chief Deputy Public Defender, for petition.

Hardy Meyers, Attorney General, Mary H. Williams, Solicitor General, and Brendan C. Dunn, Assistant Attorney General, for response.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Carson, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

Pursuant to ORAP 6.25(1)(d), defendant petitions for reconsideration of our decision in *State v. Brostrom*, 212 Or App 486, 157 P3d 1237 (2007), in which we affirmed her convictions but reversed and remanded for resentencing.[1] Defendant argues that, in light of *State v. Hess*, 342 Or 647, 159 P3d 309 (2007), which was decided by the Supreme Court after we issued our prior opinion, the trial court erred when it refused to accept her judicial admission that she had a prior conviction for assault. We grant reconsideration, modify our prior opinion, and adhere to it as modified.

Defendant was charged with two counts of criminal mistreatment and four counts of felony assault involving her minor child, D. ORS 163.160.[2] Two of the felony assault counts allege as an element of the offense that defendant had "previously been convicted of assaulting the same victim." Before trial, defendant offered to stipulate to the fact that she had a prior conviction for assaulting D. She argued that her stipulation served as a judicial admission, and, therefore, the evidence of the prior conviction should not be disclosed to the jury because it was no longer relevant. The trial court denied defendant's offer to stipulate, ruling that the fact of defendant's prior conviction was an element of the charges that

---

[1] ORAP 6.25(1)(d) authorizes reconsideration by this court when there is a claim that there has been a change in the statutes or case law since the Court of Appeals decision. Defendant failed to timely file her petition for reconsideration and moves for relief from default. We exercise our discretion to permit the filing of the untimely petition for reconsideration for purposes of judicial economy rather than requiring defendant to petition for review to the Supreme Court.

[2] ORS 163.160 provides, in part:

"(1) A person commits the crime of assault in the fourth degree if the person:

"(a) Intentionally, knowingly or recklessly causes physical injury to another; or

"(b) With criminal negligence causes physical injury to another by means of a deadly weapon.

"(2) Assault in the fourth degree is a Class A misdemeanor.

"(3) Notwithstanding subsection (2) of this section, assault in the fourth degree is a Class C felony if the person commits the crime of assault in the fourth degree and:

"(a) The person has previously been convicted of assaulting the same victim[.]"

had to be found by the jury; as a result of the court's ruling, the jury heard evidence about defendant's prior conviction. Defendant assigned error to the court's ruling on appeal, and we rejected it in our original opinion without discussion.

Thereafter, the Supreme Court issued its opinion in *Hess*. In *Hess*, the court held that, assuming *arguendo* that the prior conviction requirement in ORS 163.465(2)(b) (public indecency) was an "element" of the crime that the state must prove to a jury, a defendant's judicial admission of a prior conviction established the fact of the prior conviction conclusively and relieved the state of its burden to prove that element of the crime. *Hess*, 342 Or at 662. It concluded, therefore, that unless the state demonstrated that the fact of the admission constituted otherwise relevant evidence, the evidence of the prior conviction should have been excluded. *Id*. at 662-64.

■■ In this case, defendant offered to stipulate that she had previously been convicted of assaulting D when he was five years old. That judicial admission established the fact of the prior conviction conclusively and, under *Hess*, relieved the state of its burden to prove that element of the charges. It was therefore error for the trial court to admit evidence of the fact of the prior conviction to prove an element of the charges of felony assault. The remaining question is whether evidence of the prior conviction was admissible for some other purpose, thereby rendering the trial court's erroneous pretrial ruling harmless. In its response to defendant's petition for reconsideration, the state argues that the fact of the prior conviction was relevant under OEC 404[3] because it would have had the tendency to establish that defendant intentionally assaulted D and to refute her contention that her actions were merely intended to restrain him in order to calm him.

---

[3] OEC 404 provides, in part:

"(3) Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"(4) In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant[.]"

At trial, the state presented evidence that D had gone to a neighbor's house and reported that defendant was drunk and was threatening to beat him with a golf club. The neighbor called 9-1-1, and two police officers responded. Officer Shadron went to defendant's house, and Officer Michaels talked with D and the neighbor at the neighbor's house. Shadron testified that he believed that defendant was intoxicated. Michaels testified that D told her that defendant had hit him the day before with two plastic chairs, but Michaels did not observe any marks or bruises on him. Michaels walked with D back to defendant's house, and Shadron left to respond to another call. When she entered defendant's house, Michaels saw an empty vodka bottle and a golf club on the floor. Michaels observed that defendant appeared to be intoxicated. Defendant admitted to Michaels that she had been drinking, and she stated that she was going to call her Alcoholics Anonymous sponsor. Defendant told Michaels that D had not been doing what she had asked him to do and that there had been an argument, but denied that she had threatened him with a golf club. Michaels testified that, "I decided, you know, I was going to leave, but I didn't feel quite right about it. Something was off, but I didn't really have a lot to do with it at that point, so I was kind of in a strange place."

Michaels left the house and shut the front door, but paused on the porch between the door and D's bedroom window. She heard D, defendant's four-year-old daughter, H, and defendant's granddaughter, I, talking in D's room, and then heard defendant talking to them and telling them to clean up the room. Defendant's voice started to get louder. Defendant yelled at D and called him a liar. Michaels saw defendant lift the blinds in the window, look outside, put the blinds back down, and pull the curtain shut. Michaels was not in defendant's line of vision. Defendant began yelling again, and Michaels heard crashing noises and D yelling, "Stop, you're hurting me, stop, mom, stop," and crying loudly. Michaels then heard thumping noises. Michaels tried to reenter the house, and H let her in.

Michaels testified about what occurred next:

"And I run into the bedroom, and I come around the corner, and * * * it's kind of a bunk bed type, but there's just the top

bed to it, and there's like—they look like lofts is what it looks like it's made out of. And [D] is underneath the bed in the corner. [Defendant]'s in front of him with her back to me. She's got his hands in her hands, and she's wringing them and squeezing them really hard. She's just twisting them, and she's telling him, when I get there, * * * 'I'll break your wrists, I'll break your fucking fingers.' * * * Her teeth were clenched. [D] was in obvious pain; he was crying really loudly. I grabbed [defendant]'s arm. I told her to stop. She continued putting pressure on [D]. She wasn't listening to me. She wasn't stopping. I placed her in a wristlock, and I backed her away from [D]."

Michaels later observed that D's cheeks and ears were red, that there were scratches on D's face, red marks on his neck, and some cuts on his fingers. D told Michaels that defendant had pushed his head against the bed. Michaels testified that, based on her experience, the thumping noises that she had heard were consistent with D's head striking the support posts of the bunk bed. In addition, Michaels took pictures of the injuries, and those pictures were admitted into evidence at trial. After D testified for the state, a certified true copy of defendant's prior assault conviction was offered into evidence, and the trial court instructed the jury that it did not have to find that D was the victim of the prior conviction because "it's agreed that he was."

In her defense, defendant admitted that she had assaulted D in the past when she had been drinking and had pleaded guilty to the charge that resulted in her prior conviction. Emphasizing her position that she had not been drinking before the incident that led to the charges in this case, defendant contrasted these circumstances with the circumstances underlying her prior conviction, where she had been drinking. Defendant asserted that she had not been drinking on the day in question in this case, but that she had not been feeling well. She testified that she is a recovering alcoholic and that D becomes upset if he believes that she has started drinking again. She speculated that D found the vodka bottle in her closet because that is where, in the past, she would have hidden alcohol. She also testified that after Michaels left, D went into his room "howling" and "really mad" because he believed that she was drinking again. At the time, her four-year-old daughter was on top of the bunk bed, rocking

the bed into the wall; according to defendant, that accounted for the noise that Michaels heard. Defendant explained that D was flailing his arms around and screaming, believing that she had been drinking again. In response, she grabbed his arms to restrain him in order to calm him. She admitted cursing at D, but denied that she had intended to assault him and to cause him injury.

In rebuttal, the state offered evidence of several incidents in which defendant had been drinking, including evidence of an arrest for driving while under the influence of intoxicants. Defendant admitted to two relapses of drinking in the year before the incident in this case. Overall, the state sought to compare the underlying behavior that led to her prior conviction with defendant's conduct in this case in order to impeach defendant's assertion that she had not been drinking this time.[4]

■ The test for affirmance under the Oregon Constitution is whether there is little likelihood that the error affected the jury's verdict. If so, the evidentiary error is harmless. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Here, the issue is whether there is little likelihood that the error of admitting the fact of defendant's prior conviction affected the jury's verdict.

Even though the state did not offer evidence of the prior conviction for the express purpose of refuting defendant's position that she was trying to calm D, the state used the evidence for impeachment purposes, and the trial court expressed its intention, during a pretrial hearing in regard to character evidence, to apply OEC 404(3) to future evidentiary disputes arising during the trial.[5] Had the state made that argument to the trial court, evidence of the fact of the prior conviction would have been admissible under OEC 404(3) because it would have had the tendency to establish

---

[4] Defendant does not argue that she would not have testified if the trial court had excluded evidence of her prior conviction for assault.

[5] The trial court explained, "[i]t's Rule 404 of the Oregon Evidence Code I'm going to follow," and "it's hard to anticipate in advance exactly what every one of my rulings will be, but I would just say generally I'm going to follow to the best of my ability Rule 404."

that defendant intentionally assaulted D rather than intending to restrain him to calm him. *See, e.g., State v. Yong*, 206 Or App 522, 541-43, 138 P3d 37, *rev den*, 342 Or 117 (2006) (holding that evidence of a prior assault was relevant to prove that the defendant acted intentionally to injure the victim, rather than to restrain her from hitting him).

Moreover, defendant affirmatively undertook to use the underlying facts of her prior conviction to support her contention that she had not been drinking alcohol on this occasion. The use of the circumstances of the underlying conviction by defendant opened the door for evidence offered by the state of other incidents during which defendant had been drinking, including evidence of the prior conviction. In light of the officers' testimony, defendant's admissions to Officer Michaels, and the other evidence offered, including defendant's testimony, there is little likelihood that the error in admitting evidence of the fact of the prior conviction to prove an element of the charges would have affected the jury's verdict. *State v. McGinnis*, 335 Or 243, 251, 64 P3d 1123 (2003); *see also State ex rel Juv. Dept. v. Cook*, 325 Or 1, 4-5, 932 P2d 547 (1997) (holding that where the defendant testified about circumstances that were the subject of his motion to suppress, any error regarding his motion to suppress was eliminated by his subsequent testimony).

Relief from default granted; reconsideration allowed; former opinion modified and adhered to as modified.