Argued March 7, affirmed June 11, 1969

# STATE OF OREGON, *Respondent, v.* EMIL KLAMERT, *Appellant.*

455 P2d 607

*John Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender.

*Robert A. Lucas,* Deputy District Attorney, Portland, argued the cause for respondent. With him on the brief was George Van Hoomissen, District Attorney.

Before McAllister, Presiding Justice, and O'Connell and Denecke, Justices.

McALLISTER, J.

The defendant was convicted of assault with intent to kill and sentenced to imprisonment for 15 years, from which judgment he appeals.

The only assignment of error alleges that the trial court erred in admitting evidence of a threat made by defendant against a class of persons because the victim was not a member of the class.

On August 9, 1967, Officer Floyd Embree, a Portland policeman, went to defendant's residence in northeast Portland to investigate a complaint about someone shooting in the area. When Embree questioned defendant in his home, he found that defendant would not talk about the shooting, but wanted to complain about a beating he had received in a tavern about two weeks earlier. Defendant, who had been drinking, became belligerent. Embree cautioned defendant about his abusive language and started to leave. Defendant asked the officer to wait and stepped into an adjoining room. Embree started to follow defendant, but as he got to the doorway he met defendant, who pointed a rifle at Embree's chest and said: " 'You son-of-a-bitch. You can't talk to me that way. I'll kill you.' " The officer testified:

> "I put my right arm up against the gun and pushed it aside. I said, 'Put that gun down. Somebody's going to get hurt.'
>
> "Again he drew it away and said, 'You son-of-a-bitch. I'll kill you.'
>
> "At this time I realized that I was in trouble. So as far as I can recollect, I started to reach

with my left hand for the barrel of the gun and tried to step back around the partition and pull my own gun, at which time the shot was discharged."

The officer was hit in the shoulder by the bullet and seriously injured.

Defendant testified that he had purchased the rifle "just a few weeks" before he shot Embree. A neighbor testified that about two weeks before the shooting defendant told him that he bought the rifle "[t]o shoot the first son-of-a-bitching officer that walked through that door."

Defendant was apparently an alcoholic and had on several occasions served terms in the city jail for drunkenness. Officer O'Drane, who was in charge of the trusty section of the jail, testified that around the middle of July the following occurred:

"A  Well, right around the middle of July or approximately there, right at close to twelve o'clock noon, I was sitting in my office. That is on the third floor of the Police Building, and I heard a man talking. And I turned around and Mr. Klamert was there, standing just outside of my office, and he was speaking and I said, 'What is it?'

"And he said, — he says, 'Young Cops.' He says, 'Punks, they should be killed.'

"Well, this is not unusual in our business to hear this, and, of course, I knew Mr. Klamert and I said, 'Well, do you mean me?'

" 'No, not you, young ones.'

"I said, 'Well, go — get away, get lost, take off.' And that's just about the extent of it right there. I didn't want to talk to the man and I just said, 'Leave', and he did.

"Q He was not in custody then?
"A No, he was not."

Defendant contends in this court that the threat made to Officer O'Drane was inadmissible, because the threat was made only against young policemen as a class and that Officer Embree, who had been a policeman for 25 years, was not a member of the class threatened.

There is no merit in this assignment. In the first place, the testimony was not objected to on the ground urged in this court. In the trial court the testimony was objected to only on the ground that it was "too far removed" and that "it's within the realm of reputation and general attitude." This court has consistently refused to consider an objection to testimony on a different ground than the one urged in the trial court, *State v. Von Klein,* 71 Or 159, 171, 142 P 549, Ann Cas 1916C 1054 (1914); in *Re Application of Barton,* 111 Or 111, 118, 225 P 322 (1924).

In any event the testimony was admissible. The applicable rule is stated in *State v. Meyers,* 57 Or 50, 54, 110 P 407, 33 LRA NS 143 (1910), where the court said that "threats against a particular class of persons, as, for instance, a threat to kill all policemen, are admissible in a prosecution for killing a member of the particular class indicated in the threats." See, also, 1 Wharton's Criminal Evidence (12th ed) 394, § 197. The jury could reasonably infer that a statement that "young cops" are "punks" and should be killed indicates animosity against policemen in general. The threat made by defendant "might naturally include the act charged." 1 Wigmore on Evidence (3d ed) 539, § 106.

The judgment is affirmed.