LANDAU, S.J.
**516 In this criminal case, defendant was convicted of felony fourth-degree assault constituting domestic violence. ORS 132.586 ; ORS 163.160(3)(c). On appeal, he challenged the admission of evidence that he had previously assaulted two other intimate partners within the last 14 years. The state argued that the evidence was admissible to prove intent, and the Court of Appeals agreed. State v. Tena , 281 Or.App. 57, 384 P.3d 521 (2016). We conclude that the evidence of the two prior incidents of domestic violence were impermissible character evidence. We therefore reverse the decision of the Court of Appeals.
The relevant facts-at least for the purposes of appeal-are not in dispute. Defendant lived with the victim, who was his girlfriend, and her step-sister. Drinking alcohol was prohibited at that residence. In August 2011, he came home and was upset because the victim had failed to respond to his text messages quickly enough. He demanded to know whether she had been drinking. Before she could answer, defendant grabbed her hair and punched her in the face repeatedly until she fell. Defendant lifted the victim by the throat and threw her to the floor again. The victim yelled for defendant to stop, but defendant punched her in the face several more times. The victim's step-sister called 9-1-1, and while she was on the phone, defendant *178 left. Police arrived, and the victim told them that defendant had assaulted her.
The state charged defendant with fourth-degree assault. Because defendant previously had been convicted of at least three domestic violence assaults, the assault was charged as a felony. ORS 163.160(3)(c).
Defendant's theory of the case was that he had not assaulted the victim at all and that she had accidentally injured herself. And, by the time of trial, the victim had recanted her report to the police. She testified that she had tripped during a purely verbal argument and that she had hit her face against a chair.
The state sought to introduce evidence of two previous assaults to show that the victim had not accidentally injured herself and that defendant had intentionally **517 assaulted her. The first incident occurred 14 years earlier, in 1997, when defendant attacked his then-wife, PT. He and PT had been arguing over childcare issues and PT's desire to attend truck-driving school. When PT attempted to leave, defendant punched her in the face multiple times and pushed her down, causing her to fall and hit her head. Defendant put a belt around her neck and squeezed for 30 seconds until the belt broke and PT pretended to pass out. She asked defendant to call an ambulance, but defendant refused and told her to lie in bed. He kept her there for several hours and then left.
The second incident occurred seven years later, in 2004, and involved defendant's then-girlfriend, LW. Defendant and LW were at a bar drinking when LW recognized a male friend of hers. She greeted him and gave him a hug. When LW turned back to defendant, she discovered that he had left, requiring her to walk four miles to get home. When she arrived at home, defendant punched her in the head. She fell and struck her head on the fireplace, losing consciousness. Defendant kicked LW in the ribs repeatedly to wake her and then dragged her by the hair to their bedroom. In the bedroom, defendant lay on top of LW to keep her from leaving, punching and strangling her over two and a half hours. He accused LW of wanting to have sex with other men and told her that he would kill her that night and bury her in the backyard. LW played dead, and when defendant went to get a knife, she jumped through the back window and climbed over a fence to escape. He caught LW in the driveway, but fled when she screamed.
The state argued that the evidence of the two prior assaults was admissible under either of two theories under OEC 404(3). First, the state asserted that the evidence was admissible to prove defendant's hostile motive toward the victim. Second, it argued that it was admissible to establish defendant's intent, under the doctrine-of-chances theory. Defendant objected to the admissibility of the evidence of the prior assaults on the ground that they lacked sufficient similarity to the charged offense to be probative of his motive or intent. The trial court allowed the evidence under both hostile motive and intent theories of admissibility.
**518 Defendant was convicted and appealed his conviction to the Court of Appeals, arguing that the trial court erred in admitting the evidence of his assaults on two previous intimate partners to show either hostile motive or intent.
The Court of Appeals affirmed, holding that the trial court properly allowed the evidence of the previous assaults to prove defendant's hostile motive toward the victim. The court stated that, because it had determined that the evidence was properly admitted as hostile-motive evidence, it did not reach the issue of admissibility to show intent. Tena , 281 Or.App. at 71, 384 P.3d 521.
On review before this court, defendant argues that the evidence of the two prior incidents of domestic violence was not admissible to prove motive, because the prior incidents do not in any way explain why defendant assaulted the victim in this case. Defendant further argues that the evidence is not admissible to prove intent under a doctrine-of-chances theory, because, at a minimum, that theory requires sufficient similarity between prior acts of misconduct and the act at issue to permit an inference that the act at issue was committed intentionally. In this case, defendant argues, the prior acts of domestic violence were too dissimilar to permit that inference. In the alternative, defendant argues that, even if the evidence of prior acts is *179 otherwise admissible to establish motive or intent under OEC 404(3), it remains inadmissible because the probative value of the evidence is substantially outweighed by its prejudicial effect, under OEC 403.
In response, the state reprises its arguments that the evidence of the two prior incidents is admissible under OEC 404(3) because it constitutes evidence of motive or intent. Specifically, the state argues that the evidence shows "defendant's strong desire to assert control and power over his intimate partner," and "[t]he fact that defendant's previous domestic partners had suffered similar injuries in similar circumstances tended to show that the current victim's injuries were inflicted intentionally." As for defendant's argument that, at all events, the evidence is inadmissible under OEC 403, the state asserts that it is unpreserved. In **519 the alternative, the state argues that, if the evidence was inadmissible to prove motive or intent under OEC 404(3), this court still should conclude that the evidence is admissible under an alternative rule, OEC 404(4).
We begin with a brief summary of the relevant legal principles. OEC 402 states that "relevant evidence is admissible," except as otherwise provided elsewhere in the Oregon Evidence Code, the state or federal constitutions, or other applicable laws. OEC 403 is one such limitation on the admissibility of relevant evidence. It provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."
OEC 404(3) sets another limitation on the admissibility of relevant evidence. It declares that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." (Emphasis added.) But it adds that such evidence is admissible for purposes other than proving a person's character and the propensity to act consistently with that character, namely, "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Thus, under OEC 404(3), the admissibility of other-acts evidence depends on the purpose for which it is offered.
OEC 404(4), however, provides that, in criminal actions, "evidence of other crimes, wrongs or acts by the defendant is admissible if relevant," except as otherwise provided by specific statutory provisions to the contrary and by the state or federal constitutions. Under that rule, other-acts evidence is generally admissible, regardless of the purpose for which it is offered, though it may still be inadmissible under, among other things, the state or federal constitution. On its face, the rule appears to conflict with OEC 404(3), at least in part; specifically, it appears to conflict with the part of OEC 404(3) that states that other acts evidence is not admissible to prove a defendant's character in a criminal action.
**520 In a series of decisions issued over the course of the last several years, this court has attempted to identify the interplay between those apparently contradictory rules. In State v. Williams , 357 Or. 1, 15, 346 P.3d 455 (2015), the court concluded that OEC 404(4) has the effect of superseding the part of OEC 404(3) that declares inadmissible other-acts evidence offered to prove character; under OEC 404(4), other-acts evidence-even to prove the character of a criminal defendant-is admissible, at least unless otherwise provided by, among other things, the state or federal constitutions. Id. The court noted that OEC 404(4) did not have the effect of superseding the part of OEC 404(3) stating that "other acts" evidence is admissible when offered for a non character purpose. Id.
The court in Williams further addressed what OEC 404(4) means when it acknowledges that such generally admissible character, or "propensity," evidence nevertheless may be inadmissible because its admission would be so unfair that it would violate the state or federal constitution. Id. at 18, 346 P.3d 455. The court concluded that, under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, such evidence may be inadmissible because its probative value is substantially outweighed by its prejudicial effect. Id. What *180 the court did not address was the precise nature of the balancing of probative value and prejudicial effect of admitting other acts evidence to prove a criminal defendant's character-that is, whether the sort of balancing that the Due Process Clause requires is captured in OEC 403 or is some other sort of balancing process. Id. at 19 n.17, 346 P.3d 455.
The court took up that issue in State v. Baughman , 361 Or. 386, 393 P.3d 1132 (2017). In brief, the court concluded that the legislature, by referring in OEC 404(4) to whether the state or federal constitution requires the exclusion of otherwise admissible other acts evidence offered to prove a criminal defendant's character, intended the balancing described in OEC 403 to apply. Id. at 402, 393 P.3d 1132.
The court in Baughman explained that, as a result, the admissibility of evidence of other acts is determined by means of a two-part test:
**521 "When a party objects to the admission of other acts evidence, a trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence is also admissible under OEC 404(4) and OEC 403. However, if a trial court determines that the proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403."
Id. at 404-05, 393 P.3d 1132.
With those general principles in mind, we turn to the other-acts evidence at issue in this case. As we have noted, the state argues that two prior instances of domestic violence are admissible for two nonpropensity purposes, under OEC 404(3) -both because they show defendant's hostile motive and because they show his intent, under the doctrine of chances.
We start with the argument that the evidence is admissible to show defendant's hostile motive. The term "motive" in this context refers to 'a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act.' State v. Hampton , 317 Or. 251, 257 n.12, 855 P.2d 621 (1993) (quoting State v. Walker , 244 Or. 404, 412, 417 P.2d 1004 (1966) ). It "refers to why a defendant did what he did." Hampton , 317 Or. at 257 n.12, 855 P.2d 621 (citing State v. Rose , 311 Or. 274, 283, 810 P.2d 839 (1991) ).
Whether evidence of other acts is admissible to show why a defendant did what he or she did depends on the existence of an adequate logical connection between the other acts and the charged acts. In State v. Moen , 309 Or. 45, 68, 786 P.2d 111, 126 (1990), for example, the court explained **522 that evidence of "a defendant's prior hostile acts toward a * * * victim or toward a class of persons to which the victim belongs" may be relevant to prove the defendant's motive in later assaulting the victim. Specifically, the court upheld the admissibility of evidence that the defendant, who had been charged with shooting the victims with a handgun, had previously threatened to kill the victims and threatened them with a gun. Id at 70, 786 P.2d 111, 126.[1]
In contrast, in State v. Flett , 234 Or. 124, 380 P.2d 634 (1963), the court held that evidence that a defendant had engaged in a *181 previous extramarital affair was not admissible to prove her motive in later killing her husband. The court explained that the connection between the acts of marital infidelity and the killing of her husband was "extremely tenuous," especially in light of the fact that the other acts were "isolated" and did not occur close in time. Id. at 127, 380 P.2d 634. The court explained that, for prior acts to be admissible to prove motive, the state must "show some substantial connecting link between the two acts," that is, between the other act and the charged act. Id. at 128, 380 P.2d 634. See also Turnidge , 359 Or. at 451, 374 P.3d 853 (quoting Flett for proposition that there must be a "substantial connecting link" between other act and charged act to be admissible evidence of motive).
In this case, the state argues that it has supplied the required "substantial connecting link." Citing Moen , the state contends that the other-acts evidence is admissible because it involves assaulting others who were in the same class of persons to whom the victim belongs, namely, intimate partners. According to the state, the evidence of defendant's prior assaults "had a tendency to prove that defendant develops hostile feelings toward his intimate partner when he perceives that his control and power over her is threatened or questioned, which supports an inference that he intentionally assaulted his intimate partner in this case."
**523 Moen does refer to evidence of other acts toward a victim "or toward a class of persons to which the victim belongs." 309 Or. at 68, 786 P.2d 111. But we take the reference to a "class to which the victim" belongs to require more than the simple fact that the other acts involved such individuals.
Suppose, for example, that a defendant is on trial for assaulting a neighbor in the course of an argument about a football game, and that he had committed two other assaults against other neighbors in the past. In the case of the first assault, the defendant attacked the neighbor during a dispute over the boundary between their properties. In the case of the second assault, the defendant hit another neighbor over a dispute concerning a dent in the defendant's truck. Those prior acts are not admissible to prove that the defendant later had a hostile motive to assault a third neighbor merely because those other acts involved assaults of neighbors. There is insufficient evidence that the cause or reason for the prior assaults or for the charged assault was the fact that the victims were neighbors.
Thus, the admissibility of other-acts evidence under a "hostile motive" theory that does not involve the same victim requires proof that the motive for committing the other acts was that the other persons were members of the class to which the victim belongs. If there is insufficient evidence that the other acts against those persons were motivated by the fact that they were members of a given class, there is no basis for establishing the required "substantial connecting link" between the acts against them and those against the victim.
For example, in State v. Klamert , 253 Or. 485, 455 P.2d 607 (1969), the defendant, charged with assaulting a police officer, objected to the admissibility of testimony that he had previously threatened police officers, saying that "cops" were "punks" who "should be killed." Id. at 487-88, 455 P.2d 607. The court concluded that the previous statement revealed the defendant's animus against others because they were police officers , and so was probative of his motive in assaulting the victim, who was also a police officer. Id . at 488, 455 P.2d 607. See also State v. Meyers , 57 Or. 50, 54-55, 110 P. 407 (1910) ("[T]hreats against a particular class of persons * * * are **524 admissible in a prosecution for killing a member of the particular class indicated in the threats.").
In this case, the state assumes that, because defendant assaulted two of his prior intimate partners, those assaults were motivated by the fact that they were his intimate partners. One does not necessarily follow from the other, however. Certainly, those assaults, in theory, could have been motivated by the fact that the victims were his intimate partners. But the evidence indicated that the prior assaults involved other motives, such as a disagreement about child-care issues, the victim's desire to work, and jealousy. Indeed, the prosecutor in the present *182 case acknowledged to the trial court that, "[a]s far as [defendant's] motive or reason for being angry at the victim-these victims, it sort of varies in terms of the circumstance."
Moreover, as in Flett , the connection between the other acts at issue and the charged act is tenuous, given that the other acts are relatively isolated and not close in time. We conclude that the trial court erred in ruling that the evidence of the two prior assaults had probative value for the nonpropensity purpose of establishing defendant's motive.
We turn, then, to the state's alternative argument, that evidence of the previous assaults was admissible under the doctrine-of-chances theory to show that defendant intentionally assaulted the victim. The basic idea behind the doctrine of chances is the "proposition that multiple instances of similar conduct are unlikely to occur accidentally." Baughman , 361 Or. at 407, 393 P.3d 1132. The more often a defendant intentionally performs an act, the less likely it is that, when the defendant performs the act again, he or she did so accidentally or innocently. As the court explained in Johns , "[t]he recurrence or repetition of the act increases the likelihood of a mens rea or mind at fault." 301 Or. at 552, 725 P.2d 312.
It is important to emphasize that the doctrine of chances applies only to explain whether or not an act that a defendant performed was performed intentionally. It does not apply when there is a dispute about whether the defendant performed the act at all. As this court explained in **525 Turnidge , the doctrine concerns the admissibility of evidence "offered to prove a defendant's intent or absence of mistake[;] * * * that is, evidence countering a defendant's claim that he or she performed the act alleged but did so by mistake." 359 Or. at 435, 374 P.3d 853. It applies to evidence of other acts offered to show that "the defendant acted intentionally, rather than inadvertently." Id. at 436, 374 P.3d 853.
In this case, defendant does not contend that he injured the victim inadvertently. He contends that he did not injure the victim at all. His defense was that he and the victim engaged in a purely verbal argument and that she injured herself when she accidentally tripped and hit her face on a chair. Under those circumstances, the doctrine of chances does not apply. Accordingly, the state cannot rely on it to establish the relevance of the other acts for the nonpropensity purpose of establishing defendant's intent under a "doctrine of chances" theory.
Because we conclude that the evidence of the prior acts was not admissible for a nonpropensity purpose under OEC 404(3), we need not address defendant's unpreserved OEC 403 argument that the evidence was also independently inadmissible on the ground that, on balance, its probative value is substantially outweighed by its prejudicial effect.
That leaves the state's argument that, even if the evidence of the prior acts was not admissible under OEC 404(3), it remains admissible under OEC 404(4) regardless of whether it has probative value for a nonpropensity purpose. Defendant argues that the state may not rely on that theory of admissibility, because it was not advanced at the trial court, and this court is not in a position to decide the matter for the first time on appeal.
We agree with defendant. Under Baughman , once a court determines that evidence of other acts is not probative for a nonpropensity purpose under OEC 404(3), it may turn to whether the evidence nevertheless is admissible under OEC 404(4). That analysis necessarily includes the next step of determining whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. 361 Or. at 404-05, 393 P.3d 1132. We have noted that, when other-act evidence is not relevant for a nonpropensity **526 purpose, "more significant due process concerns are implicated, and, generally, the danger of unfair prejudice will substantially outweigh the probative value of the evidence." Id. at 405, 393 P.3d 1132. But that is not a determination that we can make as a matter of law, for the first time on review, at least not in this case. Accordingly, the trial court can address that issue on remand. See, e.g. , *183 State v. Mazziotti , 361 Or. 370, 376, 393 P.3d 235 (2017) (remanding for trial court to conduct balancing under OEC 403 ).
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

In Moen , this court suggested that the admissibility of evidence of hostile intent turned, at least in part, on the multi-factor analysis set out in State v. Johns , 301 Or. 535, 555-56, 725 P.2d 312 (1986). But more recently, in State v. Turnidge , 359 Or. 364, 436, 374 P.3d 853 (2016), the court clarified that such analysis is limited to determining the admissibility of other-acts evidence on other grounds, namely the doctrine of chances.