Argued and submitted December 6, 2019; convictions on Counts 1, 4, 5, 7, 9, 10, 11, and 12 reversed and remanded, remanded for resentencing, otherwise affirmed March 17, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ERIC LEE STOCKTON,
aka Eric Stockton,
*Defendant-Appellant.*

Jackson County Circuit Court
17CR22703; A165499

483 P3d 657

Defendant appeals his convictions of multiple criminal offenses, stemming from a series of domestic violence incidents involving a former intimate partner. Among other things, defendant argues that the trial court erred by admitting evidence of other charged and uncharged misconduct committed against both the same intimate partner and other former intimate partners under "hostile motive" and "doctrine of chances" theories of relevance and by accepting nonunanimous verdicts from the jury. *Held*: The trial court erred in admitting the other misconduct evidence. The evidence did not qualify for admission under the doctrine of chances because it did not arise from a series of uncommon and similar, claimed accidental events. *See State v. Skillicorn*, 367 Or 464, 484, 479 P3d 254 (2021). Nor did the evidence show a common motive (apart from generalized hostility) among the other misconduct and the acts charged in this case that persisted over a period of time, animating defendant to commit the charged offenses. Instead, the only inferences that the other misconduct evidence permitted were impermissibly propensity-based. The trial court also erred in admitting the challenged evidence under OEC 404(4) in light of the state's narrow reliance on the doctrine of chances and hostile motive as theories of relevance under that provision. The erroneous admission of the other misconduct evidence was not harmless with respect to two convictions based on unanimous verdicts. Finally, the convictions based on nonunanimous verdicts were erroneous and must be reversed and remanded.

Convictions on Counts 1, 4, 5, 7, 9, 10, 11, and 12 reversed and remanded; remanded for resentencing; otherwise affirmed.

Timothy Barnack, Judge.

Larry R. Roloff argued the cause and filed the brief for appellant.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Brewer, Senior Judge.*

BREWER, S. J.

Convictions on Counts 1, 4, 5, 7, 9, 10, 11, and 12 reversed and remanded; remanded for resentencing; otherwise affirmed.

_____
* Brewer, S. J. *vice* Armstrong, P. J.

**BREWER, S. J.**

Defendant was convicted by a jury of multiple criminal offenses, including three counts of felony fourth-degree assault involving domestic violence. ORS 163.160(3).[1] The victim of the charged assaults was defendant's former intimate partner, T. On appeal, defendant raises six assignments of error in his opening brief and additional assignments of error concerning nonunanimous jury instructions and verdicts in a supplemental brief. We write primarily to address defendant's third assignment of error, which challenges the trial court's admission of evidence of other charged and uncharged misconduct by defendant involving T and two of defendant's other former intimate partners. As elaborated below, we conclude that the trial court erred in admitting the other misconduct evidence and that the error was not harmless with respect to defendant's convictions for tampering with a witness and second-degree criminal mischief. We reject the remaining assignments of error in defendant's opening brief without discussion.

In supplemental assignments of error, defendant argues that the trial court erroneously instructed the jury that it need not be unanimous, and that was structural error requiring reversal of all of his convictions, including the three convictions that were based on unanimous verdicts. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020) (holding that nonunanimous jury verdicts for serious offenses were impermissible under the Sixth Amendment). The state concedes that defendant is entitled to reversal and remand on the counts involving nonunanimous verdicts. We agree, accept the concession, and exercise our discretion to correct the plain error for the reasons set out in *State v. Ulery*, 366 Or 500, 464 P3d 1123 (2020). As for defendant's structural error challenge to the three convictions based on unanimous verdicts, the Supreme Court

---

[1] Defendant's convictions included, in addition to the three counts of fourth-degree assault (Counts 1, 7, and 11), counts concerning possession of methamphetamine (Count 3), first-degree burglary (Count 4), coercion (Counts 5 and 9), tampering with a witness (Count 10), and second-degree criminal mischief (Count 12). The jury's verdict was unanimous with respect to Counts 3, 10, and 12, but not as to the other convictions. Defendant was acquitted on the remaining counts.

rejected a similar challenge in *State v. Flores Ramos*, 367 Or 292, 478 P3d 515 (2020). We reject it here, too, without further discussion.

Ultimately, we reverse and remand on Counts 1, 4, 5, 7, 9, 10, 11, and 12, and otherwise affirm.[2]

## I.   BACKGROUND

The indictment contained charges relating to numerous incidents, but we limit our discussion to the evidence relating to the events that gave rise to the fourth-degree assault (Counts 1, 7, and 11), tampering with a witness (Count 10), and second-degree criminal mischief (Count 12) convictions. Defendant and T were intimate partners for about four years. Their relationship was punctuated by several reports by T that defendant had committed acts of domestic violence against her. We summarize the evidence pertaining to the three incidents that resulted in the above-described convictions in this case as follows:

## A.   *Hairspray Can Incident (Count 1)*

On December 17, 2014, T was injured when defendant threw a can of hairspray through the open passenger window of her moving car, striking her on the chin. Defendant did not dispute that he threw the hair spray can at the car, but his position at trial was that hitting her was an accident.[3] T testified on cross examination that defendant was "surprised" to have hit her, and defendant's mother

_____

[2] For two independent reasons, even though they were not based on unanimous verdicts, we decline simply to reverse and remand the fourth-degree assault convictions based on the United States Supreme Court's decision in *Ramos*. First, the same or similar issues regarding other misconduct evidence under OEC 404(3) are likely to arise again with respect to those counts on remand, so in the interest of judicial efficiency we address them now. *See, e.g.*, *State v. Deloretto*, 221 Or App 309, 189 P3d 1243 (2008), *rev den*, 346 Or 66 (2009) (addressing assignments of error that are likely to arise on remand despite reversing on different ground); *Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 50 P3d 238, *rev den*, 335 Or 42 (2002) (addressing ruling concerning availability of certain type of attorney fees under ORS 87.060 as likely to arise on remand). Second, as explained below, we conclude that the erroneous admission of the other misconduct evidence was not harmless as to defendant's convictions on two counts on which the jury's verdict was unanimous (Counts 10 and 12), and which would not otherwise be subject to reversal and remand under *Ramos*.

[3] Defendant did not testify at trial, but his counsel took that position in his defense.

testified that the can struck T by mistake, and they were both laughing about it.

### B.  *Motorhome Incident (Count 7)*

On January 29, 2016, T called defendant and asked him to come to a motorhome where she was staying. After initially declining, defendant agreed and brought dinner. T had been using methamphetamine. The owner of the motorhome, WE, became concerned about T and checked on her. Defendant held a knife to T's back and forced her to assure WE that she was alone and fine. However, WE was certain that someone else was there, and she called the police. When deputies arrived, defendant prevented T from opening the door. Eventually defendant released her. Deputy Scow noticed a lump on T's head immediately upon seeing her. T reported that defendant caused the lump by throwing her phone at her head. T stated that defendant bit her and "backhanded" her and that he held his hand over her mouth to keep her from crying out whenever he believed someone was approaching the motorhome. While testifying about the incident, T struggled to recall certain details, but she appeared to clearly recall the abuse itself.

### C.  *G's Residence Incident (Counts 10, 11, and 12)*

On February 20, 2016, T and defendant were staying at the home of G. When T tried to leave, defendant became angry and trapped her inside, causing an injury to her leg. T reported to police that defendant took her phone, repeatedly asked her what she told police regarding an earlier domestic violence incident, and when T refused to tell him what she told police, defendant threw her to the floor and kicked her while telling her to "fix it or you're not going to have any family either." When T managed to escape and attempted to leave in her friend's car, defendant jumped on the hood and broke one of the windows. After riding on the hood down the driveway, defendant got off and began kicking the car.

T made two 9-1-1 calls that day, the first as she was leaving G's residence. The second call was made from a friend's house. During the second call, T refused to tell the dispatcher where she was because she was at a drug house and did not want to get her friends arrested.

        In charging the assault offenses, the state alleged, in addition to the other elements of fourth-degree assault, that defendant previously had been convicted at least three times under ORS 163.160 or equivalent laws of another jurisdiction for assault. The state further alleged that the currently-charged assault offenses constituted domestic violence in that "defendant and the alleged victim are persons who have been involved in a sexually intimate relationship."

        Defendant's position at trial was that he did not commit the charged acts, except that, with respect to the hairspray can incident, defendant's position was that, although he threw the can, it struck T by mistake. Anticipating those theories of defense, before trial, the state sought a ruling that certain evidence of defendant's other charged and uncharged misconduct would be admissible at trial under various theories: to invite nonpropensity inferences of hostile motive and absence of mistake, as well as to invite propensity inferences under OEC 404(4). In total, the state proffered, and the trial court admitted, evidence of seven separate incidents of other misconduct by defendant:

        (1)   An incident in which defendant had been convicted in 2003 for kidnapping and assaulting a different former intimate partner, S, over a decade before the conduct charged in this case. Although the state had anticipated calling her as a witness, S did not testify, and the trial court admitted a copy of the judgment convicting defendant for those offenses as evidence of other misconduct.

        (2)   An incident on January 2, 2014, in which defendant had been arrested but ultimately not prosecuted for assaulting, strangling, and harassing another former intimate partner, WI. The court admitted a 9-1-1 recording of WI's statement that defendant had beaten her up "really bad" and choked her in that incident and that she was going to hide in the bathroom. WI was crying and concerned that defendant was coming back. The dispatcher told her to stay in the bathroom.

        (3)   An incident on January 16, 2014, in which defendant had been arrested but ultimately not prosecuted for assaulting and harassing WI. The trial court admitted a

police officer's testimony that, in response to a 9-1-1 call, he had observed a bump on WI's head following that incident.

(4)   An incident that occurred on August 12, 2015, in which defendant was arrested but ultimately not prosecuted for assaulting and harassing T. The trial court admitted photographs of a "scratch with a bruise" on her leg that T suffered in that incident. T testified that defendant "pushed [her] down," "kicked [her] down to the ground" and "wasn't going to let [her] go" until someone else intervened. T also described the injury to her leg.

(5)   An incident on September 3, 2015, in which T called 9-1-1 about defendant's conduct of forcing a phone into her mouth, hitting her, and pouring soda on her. In addition to the 9-1-1 recording, T testified about that incident, recounting that defendant "push[ed]" her "down" and "poured grape soda" down her "throat so [she] couldn't scream."

(6)   An incident that occurred on September 28, 2015, for which defendant previously had been convicted of harassment against T. The trial court admitted as other misconduct evidence the record of defendant's conviction of that offense, as well as testimony of T that defendant "push[ed]" her "up against the fence at his residence," and the testimony of a police officer who observed defendant "holding [T] by the shoulders and *** shoving her into the fence."

(7)   Two uncharged incidents of assault against T that occurred in 2015, described in medical records that the trial court admitted as evidence of other misconduct. One of the records described T as having been involved in domestic abuse perpetrated by someone who had since been jailed and who had thrown her against a couch and hit her in the ribs.

In admitting the evidence of defendant's other misconduct, the trial court generally did not distinguish among the state's theories of admissibility, but repeated a consistent set of factors on which it relied, namely, that the proffered other misconduct evidence "also requires a culpable mental state, same victim [as to misconduct involving T], same or similar acts, and in balancing the evidence, it is

relevant and the probative value outweighs the risk of unfair prejudice."[4]

On appeal, defendant contends that the trial court erred in concluding that evidence of defendant's other misconduct was relevant under the proffered theories and that the court failed to properly conduct the required balancing of probative value and prejudicial effect under OEC 403.[5]

## II. STANDARD OF REVIEW

We review a trial court's determination of relevance under OEC 401 for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). We also review a trial court's determination that other misconduct evidence is relevant for nonpropensity or propensity purposes under OEC 404(3) and OEC 404(4) for legal error. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017); *State v. Cave*, 298 Or App 30, 38, 445 P3d 364 (2019). If the admission of other misconduct evidence was erroneous, in determining whether the admission of the evidence was harmless, we "review all pertinent portions of the record, not just those portions most favorable to the state." *State v. Maiden*, 222 Or App 9, 11, 191 P3d 803 (2008), *rev den*, 345 Or 618 (2009).

## III. ANALYSIS

The Supreme Court set out some of the governing principles for our analysis in *State v. Tena*, 362 Or 514, 518-21, 412 P3d 175 (2018). In a nutshell, relevant evidence is admissible under OEC 402, "except as otherwise provided elsewhere in the Oregon Evidence Code, the state or federal constitutions, or other applicable laws." *Id.* at 519. OEC 403 is one such limitation, providing that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

---

[4] The trial court's narrative appears to have followed certain criteria that the Supreme Court adopted in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), pertaining to the admission of other misconduct evidence under the doctrine of chances. As discussed below, as relevant here, the court recently overruled *Johns*, in part, in *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021).

[5] Because, as explained below, we agree with defendant that the challenged evidence was not relevant under any of the theories proffered by the state, we do not reach defendant's arguments under OEC 403.

of undue delay or needless presentation of cumulative evidence." Another limitation, OEC 404(3), provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." However, that rule further provides that such evidence is admissible as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." OEC 404(3). Complicating things, OEC 404(4) provides that, in criminal actions, "evidence of other crimes, wrongs or acts by the defendant is admissible if relevant," except "as otherwise provided by specific statutory provisions to the contrary and by the state or federal constitutions." *Tena*, 362 Or at 519.

　　"OEC 404(4) has the effect of superseding the part of OEC 404(3) that declares inadmissible other [misconduct] evidence offered to prove character; under OEC 404(4), relevant other [misconduct evidence]—even to prove the character of a criminal defendant—is admissible," unless proscribed by other relevant law. *Id.* at 520; *see also State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015). Based on the interplay among those provisions, in *Baughman*, the court stated that the admissibility of other misconduct evidence is determined under the following test:

> "When a party objects to the admission of other acts evidence, a trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403. However, if a trial court determines that proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403."

361 Or at 404-05.

With those general principles in mind, we turn to the other misconduct evidence at issue in this case. Again, defendant contends that none of the proffered evidence involving the prior incidents was relevant for any of the asserted purposes. We consider defendant's arguments under OEC 404(3) separately as to incidents involving other misconduct committed against T as distinct from evidence of misconduct against defendant's other former intimate partners. We conclude our analysis with a combined discussion of OEC 404(4) and the issue of harmlessness.

A.  *Other Incidents of Misconduct Involving Former Intimate Partners*

1.  *Hostile motive*

In *Tena*, the Supreme Court considered the admissibility of purported motive evidence in a trial involving domestic violence charges. The defendant in that case had a history of abusing intimate partners. 362 Or at 516-17. Over the defendant's objection, the trial court admitted evidence that the defendant previously had assaulted two other intimate partners as bearing on his "hostile motive" to assault his current intimate partner. *Id.* at 517. On review, the Supreme Court reversed. It rejected the state's "assum[ption] that, because defendant assaulted two of his prior intimate partners, those assaults were motivated by the fact that they were his intimate partners." *Id.* at 524. Although "those assaults, in theory, could have been motivated by the fact that the victims were his intimate partners," the "evidence indicated that the prior assaults involved other motives, such as a disagreement about child-care issues, the victim's desire to work, and jealousy." *Id.* The other acts also were "relatively isolated and not close in time." *Id.*

The court further observed that the only connection among the victims in that case was their relationship with the defendant, and it held that there must be something more. *Id.* at 523-25. The court distinguished the posited animus in *State v. Klamert*, 253 Or 485, 455 P2d 607 (1969), where the defendant targeted a police officer *because* he was a police officer. *Tena*, 362 Or at 523-24. In contrast, the court in *Tena* concluded that, because the record there did not show a common motive among the charged acts and

the acts against former partners, the trial court erred in concluding that the other misconduct evidence was relevant to prove the defendant's motive for the charged offenses. *Id*.

The record here is similarly deficient with respect to the relevance of the challenged evidence as to defendant's motive in the charged incidents. ORS 163.160 provides, in part:

"(1)   A person commits the crime of assault in the fourth degree if the person:

"(a)   Intentionally, knowingly or recklessly causes physical injury to another;

"* * * * *

"(2)   Assault in the fourth degree is a Class A misdemeanor.

"(3)   Notwithstanding subsection (2) of this section, assault in the fourth degree under subsection (1)(a) * * * of this section is a Class C felony if the person commits the crime of assault in the fourth degree and:

"* * * * *

"(c)   The person has at least three previous convictions for violating this section or ORS 163.165, 163.175, 163.185, 163.187 or 163.190 or for committing an equivalent crime in another jurisdiction, in any combination[.]"[6]

Among other elements, to prove the assault charges constituting domestic violence against T as alleged in the indictment, the state was required to prove that defendant caused harm to T while they were involved in a sexually intimate relationship. To be relevant to his motive, the other misconduct evidence had to at least relate to defendant's *mens rea*, alleged as reckless, in causing the harm. However, the state did not proffer any motive for defendant's misconduct toward his other former intimate partners. Nor did the state offer any explanation as to how the acts involving those intimate partners had any substantial link

---

[6] Defendant's charged assaultive conduct occurred in 2014 and 2016. The fourth-degree assault statute (ORS 163.160) was amended in 2015 and again in 2017. For the purposes of our analysis, the differences among the various versions of the statute are not material. Accordingly, for convenience we refer to the present version of the statute.

to the current charges. Like in *Tena*, the only link that the state established was that WI and S were former intimate partners of defendant and that he had engaged in violence toward them. That foundation was insufficient. Accordingly, the trial court erred in admitting the evidence of misconduct involving defendant's other former intimate partners to show his motive with respect to the charged offenses against T.

###### 2.  *Doctrine of chances; absence of mistake*

The trial court also admitted the misconduct evidence involving defendant's other former intimate partners as relevant to show defendant's intent under the doctrine of chances. Defendant asserts that that ruling, too, was erroneous.[7] Although in its brief on appeal the state does not defend the admission of the other intimate partner evidence on that ground, we nevertheless briefly consider it. Without undue elaboration, we conclude that the challenged evidence also was not relevant for that proffered purpose.

In its motion *in limine*, the state theorized that the other misconduct evidence was admissible under the doctrine of chances to prove defendant's intent with respect to the hairspray can count, because defendant acknowledged throwing the can at T, but claimed that it struck her by mistake. The problem with that theory is that it is based on a misconception of the "doctrine of chances." As the Supreme Court recently held, overruling in part *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), "evidence of uncharged misconduct [cannot] be admitted under the doctrine of chances for the purpose of arguing that, because the defendant engaged in deliberate conduct before, it is likely that he engaged in it again during the charged incident." *State v. Skillicorn*, 367 Or 464, 493, 479 P3d 254 (2021). The reason is that using evidence of prior deliberate misconduct to show an absence

---

[7]  The parties square off over whether defendant's intent was relevant in this case, where the indictment alleged that he acted recklessly in committing the assaults. However, the state is correct that it was entitled to prove a reckless mental state by showing that defendant acted intentionally. *See* ORS 161.115(3) ("When recklessness suffices to establish a culpable mental state, it is also established if a person acts intentionally or knowingly."). Thus, although the state did not need to prove intent, it nevertheless could have attempted to prove that defendant acted intentionally to satisfy the *mens rea* element of the charged offenses.

of mistake in a currently charged offense would violate OEC 404(3)'s prohibition on the use of other misconduct evidence to show a defendant's propensity to engage in intentional criminal conduct. *Id.* at 492.

In *Skillicorn*, the Supreme Court confined the application of the doctrine of chances to situations where the "theory of relevance [is] based on the objective improbability of the recurrence of uncommon events." *Id.* at 484. Because of that rationale, "there are two foundational requirements for the doctrine's use: similarity and unusual frequency." *Id.* at 487. As far as similarity is concerned, the fact that other misconduct—as a general category—has occurred is insufficient. Where, as here, a claim is made that conduct was accidental, to be relevant contradictory evidence under the doctrine of chances, the proffered conduct must be part of a series of similar events claimed to have the same uncommon accidental cause as the charged acts, so as to support an inference that not all of the events actually had that cause. *Id.* at 484.[8] With respect to the frequency requirement, "the number of events in the series must exceed the number of events that could reasonably be expected to share the uncommon cause," and the number "has to be sufficient to establish a fortuitous coincidence that is too abnormal or bizarre to be believed." *Id.* at 487 (quotation marks omitted).

Here, the state's theory of relevance was, in effect, that, because defendant had intentionally assaulted intimate partners in the past, it could be inferred that he acted with at least a reckless mental state in assaulting T in the charged incidents. In support of that theory, the state simply proffered a certified copy of a 2003 conviction involving one of the former intimate partners, S, as the state closed its case-in-chief, and the state adduced no evidence concerning what happened to the other former partner, WI, beyond the fact that she had incurred a head injury. The only evidence

---

[8] The court gave the following example:

"So, for example, if a party asserts that all the events in a series of similar events were accidents, an opponent might rely on the doctrine of chances to argue that the number of events exceeds the number of accidents that the party was likely to suffer, and the factfinder should therefore infer that not all the events were accidents."

*Skillicorn*, 367 Or at 484.

of similarity among the various incidents was that S and WI, like T, were intimate partners of defendant and that he had been violent with them. The evidence did not show that defendant's acts involving S and WI were claimed to be accidental, much less that they were part of a series of similar, uncommon events so as to establish a "fortuitous coincidence" that is too "abnormal" or "bizarre" to be believed. *Id*. Accordingly, the challenged evidence was impermissibly propensity based; it was not relevant under the doctrine of chances.[9]

B.    *Other Incidents of Misconduct Involving T*

1.    *Hostile motive*

Although the state proffered multiple theories of relevance for the admission of evidence of other misconduct by defendant toward T, its primary argument to the jury was that the evidence showed that defendant had a hostile motive toward T. On appeal, defendant reiterates his argument before the trial court that the evidence was not relevant for that purpose. The state counters that each of the other incidents of misconduct involving T showed personal animus, and each allegedly was committed within a few months of the charged assaults. According to the state, that foundation was sufficient to permit the jury to infer that defendant continued to harbor ill will against T when the charged incidents occurred, thus making it more probable that he committed the charged acts.

We recently addressed similar arguments in *State v. Morrow*, 299 Or App 31, 448 P3d 1176 (2019). In *Morrow*, the defendant was convicted of felony fourth-degree assault, ORS 163.160(3), and harassment, ORS 166.065(3), in connection with an incident involving his intimate partner. *Id*. at 33. On appeal, the defendant asserted that the trial court erred by admitting evidence of prior uncharged acts

---

[9] The court in *Skillicorn* acknowledged that, even if properly cabined, the doctrine of chances is the "subject of debate," and that it has been criticized as a mask for the admission of propensity evidence. 367 Or at 484 n 5. Carefully read, we do not understand the court's opinion to fully endorse the doctrine as a nonpropensity theory of relevance. Rather, the court appears to have assumed *arguendo* that it might be, based on similar assumptions by the parties and the views of a leading commentator, Professor Edward Imwinkelreid. *Id*.

of domestic violence against the same victim. *Id.* As in this case, the trial court admitted that evidence under OEC 404(3) for the purpose of showing the defendant's motive for the charged acts. *Id.*

On appeal, the defendant contended that the other misconduct evidence was not relevant to his motive and, instead, was improper propensity evidence. We agreed with the defendant that the evidence should not have been admitted as motive evidence under OEC 404(3) and that the error was not harmless. *Id.*

As pertinent here, we stated:

"Given how difficult it sometimes is to distinguish between motive and character evidence, it can be helpful to keep in mind some general principles. One is that permissible, motive-based reasoning usually 'assume[s] that a motive might exist because any person might possess one under those specific circumstances'—that is, '[t]he tendency to have such a motive is simply human'—whereas character-based reasoning derives 'from a trait of character specific to the person involved in the trial' and is 'based on inferred behavioral disposition or propensities.' *** 'When the asserted connection between the charged offense and the other-acts evidence would be merely conjectural without resort to character-based inferences, such evidence is not admissible as noncharacter motive evidence.' *** The specificity of an alleged motive also may be telling. Although there are exceptions—the most notable one being hate crimes—motive inferences tend to be specific to the circumstances and the individual victim, whereas character inferences tend to be more generalized. *** 'Typically, the more generalized the motive inference, the more like character it becomes.' *** 'The motive theory should not apply *** when the "motive" is so common that the reasoning that establishes relevancy verges on ordinary propensity reasoning or when "motive" or "intent" is just another word for propensity.'"

*Id*. at 43-44 (internal citations and footnote omitted; brackets in *Morrow*).

In *Morrow*, we acknowledged that the other misconduct evidence at issue there involved the same victim and that the conduct was similar, but we concluded that those

factors were insufficient to satisfy the relevance standard for motive with respect to the offenses charged in that case. *Id.* at 45. We said, "motive pertains to why defendant assaulted [the victim], not to the similarity of the assaults themselves." *Id.* (rejecting, as the Supreme Court had in *Tena*, the argument that similarity of assaultive episodes reflected a common motive linking the assaults). We noted that the evidence was that

> "any number of things, coupled with intoxication, triggered defendant's violence. Of the three instances presented to the jury, for example, there is no evidence as to the impetus for the Rainbow Motel incident, the Motel 6 incident began when defendant accused [victim] of sexual infidelity, and the charged acts began when [victim] questioned defendant about his recent several-hour absence."

*Id.*

The state remonstrated, as it does here, that the prior acts showed the defendant's general "hostility" toward the victim. We rejected that argument:

> "The difficulty with the state's generalized hostility argument is that it seems to depend on an assumption that anyone who assaults someone repeatedly must be generally hostile toward them, rather than rely on the specific record before the court in this case. Although repeated instances of hostile interactions between two people may give rise to a permissible inference of generalized hostility in some circumstances, it will depend on the record, and domestic violence situations are especially complicated. Here, defendant and [victim] were living together and had been in an intimate relationship for over a year at the time of the charged acts. There was no evidence of significant animosity between them except for the domestic violence incidents. In our view, the existence of domestic violence in an intimate relationship is not enough, in and of itself, to allow an inference of 'generalized hostility' as a common motive for all acts of violence over an extended period of time."

*Id.* at 46.

In reaching that conclusion, we distinguished a case on which the state relies here, *State v. Hagner*, 284 Or App 711, 395 P3d 58, *rev den*, 361 Or 800 (2017). In *Hagner*,

the defendant claimed to have accidentally shot his wife. *Id.* at 715. We affirmed the admission of evidence that the defendant had slapped his wife seven days before he shot her and yelled at her four days before he shot her, because that evidence "tended to show that defendant had a hostile relationship with the victim in the week immediately preceding the shooting" and "a jury could find that he had been motivated by the same animosity when he fired the fatal shot." *Id.* at 720. The temporal connection between the two hostile acts would allow a jury to "find [that] that same animosity motivated defendant" to commit both acts, because it would allow the jury to infer that defendant's hostility toward the victim "persisted until the time of the shooting and also motivated that crime." *Id.* at 721. The mere fact that the two acts involved the same victim was not dispositive. Rather, it was the very short timeframe involved that allowed the inference of a common motive that persisted for the entire week leading up to the victim's murder.

By contrast, in *Morrow* we reasoned that

"the other-acts evidence offers no possible explanation as to why defendant started an altercation with [victim] on October 13, when she questioned where he had been. It shows only that defendant has a propensity to drink alcohol to excess, get upset with [victim], demand that she leave, and then verbally and physically assault her. That is character evidence that, on this record, lacks any relevance to defendant's motive for allegedly committing the charged crimes on October 13."

299 Or App at 49. We further concluded that, even if we considered a narrower possible motive for the charged crimes—that the defendant assaulted the victim on October 13 because he believed that she was trespassing and was trying to get her out of the room—the other-acts evidence would not be relevant to that motive. *Id.* Importantly for present purposes, we stated:

"A *similar* motive for two acts is not the same as a *common* motive. *See* Leonard, *The New Wigmore* § 8.3 at 499 (explaining the important distinction between a 'common' motive for multiple acts and 'similar' motives for multiple

acts). To establish a common motive of trying to get [victim] out of the room, it would have to be reasonable to infer that defendant had been trying to get [victim] out of the room for weeks or months and had repeatedly assaulted her to achieve that singular purpose. That is not a reasonable inference on this record. Unlike the situation[ ] in [*Hagner*], the prior-acts evidence here does not allow an inference of a common motive, *i.e.*, a single motive that persisted over a period of time and motivated multiple acts of violence during that time."

*Id*. (emphases in original).

　　To be relevant to motive, we held, the challenged evidence had to offer an explanation as to why the "defendant allegedly assaulted, strangled, and harassed [victim] on October 13." *Id*. at 50. It did not do that, we explained, "beyond suggesting that defendant did so because that is what he always does when he gets intoxicated, becomes upset, and [victim] refuses to leave." *Id*. In short, the challenged evidence was not relevant to motive and, instead, simply invited the jury to think, "once an abuser, always an abuser." *Id*.

　　Similarly, in the present case, the state's motive theory of relevance was one of generalized hostility that persisted throughout the course of defendant's relationship with T. According to the state, when other misconduct is "directed at the same victim as alleged in the charged conduct, [an] intermediate inference is unnecessary—evidence of a defendant's hostile acts towards a particular victim readily and logically support[s] inferring that the defendant continued to harbor that hostile intent at the time of the charged conduct." Consistent with that rationale, the state has offered no explanation for how any of the prior incidents involving T established a common motive that persisted over a period of time and spurred defendant to commit multiple acts of violence against T during that period. In the absence of such a foundation, the only inference that the other misconduct evidence involving T permitted was that defendant acted consistently with a blemished character in repeatedly assaulting her. It follows that the challenged evidence was not relevant to prove defendant's motive for the conduct charged in this case.

2. *Doctrine of chances; absence of mistake*

Our analysis here largely mirrors our consideration of the other misconduct evidence involving defendant's other former intimate partners. With respect to the other misconduct evidence involving T, the state argues:

> "Here, the doctrine of chances was available *to prove defendant's intent* as to one of the charged acts—throwing a can of hairspray at the victim, which the state argued as the basis for count one in this case."

(Emphasis added.) Although it purported to follow *Johns*, the state's theory is at odds with the holding in *Skillicorn* that evidence of prior intentional misconduct cannot be admitted to prove that a defendant acted intentionally in committing a currently charged offense. *Skillicorn*, 367 Or at 493. There was no evidence that defendant's other conduct involving T was similar to defendant's conduct in the hairspray can incident. Nor, of necessity, did the challenged evidence comprise a series of similar, uncommon events sufficient to establish a "fortuitous coincidence" that is too "abnormal" or "bizarre" to be believed. *Id*. at 487. Therefore, the other acts evidence involving T was not relevant under the doctrine of chances.

C. *Propensity Evidence Under OEC 404(4)*

Once a court determines that evidence of other misconduct is not probative for a nonpropensity purpose under OEC 404(3), it may consider whether the evidence nevertheless is admissible under OEC 404(4). To be admissible under OEC 404(4) to prove defendant's character in order to show that he acted in conformity therewith, the proffered other misconduct evidence had to be relevant to an issue in this case. *See Williams*, 357 Or at 20 (holding that "OEC 404(4) makes 'other acts' evidence admissible if it is relevant under OEC 401 and admissible under OEC 403"); *see also Baughman*, 361 Or at 400 (stating that "OEC 404(4) preserves 'traditional standards of relevancy'" (quoting *State v. Moore/Coen*, 347 Or 371, 389, 245 P3d 101 (2010))).

Under *Williams*, propensity evidence needs only to be relevant in the broad sense of OEC 401, not relevant for one of the specific purposes in OEC 404(3), but the state

has identified no basis for relevance in this case other than hostile motive and the doctrine of chances. For the reasons already discussed, the other misconduct evidence here was not relevant under those theories. Because the state relies solely on the theories of motive and the doctrine of chances in support of its argument that the challenged evidence was relevant under OEC 404(4), our rejection of those theories of relevance is a sufficient answer to the state's reliance on OEC 404(4).[10]

## D.  *Harmless Error*

In light of the nonunanimous verdicts on the assault charges (Counts 1, 7, and 11), it is necessary under *Ramos* to reverse defendant's convictions on those counts and remand them to the trial court. We therefore do not consider the issue of harmlessness with respect to the convictions on those counts. As noted, however, the verdicts were unanimous on three additional counts: possession of methamphetamine (Count 3), tampering with a witness (Count 10), and criminal mischief (Count 12). Accordingly, we must consider whether the error in admitting the other misconduct evidence was harmless with respect to the convictions on those counts.

"As a matter of constitutional provision, statute, and rule, we may not reverse a judgment based on the erroneous admission of evidence if the error did not substantially affect defendant's rights, *i.e.*, was harmless." *State v. Carrillo*, 304 Or App 192, 201, 466 P3d 1023, *rev den*, 367 Or 220 (2020). An error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In *Williams*, the Supreme Court noted that evidence of a defendant's other misconduct, particularly when it lacks legitimate probative value in the context of the case, presents a substantial "risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime." 357 Or at 20. As the trial in this case played out, that risk was palpable.

---

[10] In *State v. Turnidge (S059155)*, 359 Or 364, 432, 374 P3d 853 (2016), the Supreme Court observed that, in *Williams*, it had "reserved" the question of "the extent to which prior bad acts evidence can be admitted solely for propensity purposes in criminal cases other than ones involving child sexual abuse." That question remains unresolved.

Defendant stipulated to his convictions for the prior offenses (including the convictions involving S and T) that, under ORS 163.160, would convert any fourth-degree assault convictions in this case into felonies. Thus, evidence of those convictions would not have been presented to the jury unless the convictions were admissible as evidence of other misconduct.[11] As we have previously determined, the evidence of defendant's other misconduct, including those convictions, was not relevant on the grounds asserted by the state. Moreover, the state used the evidence to argue that defendant should be held accountable, in part, because he had evaded criminal responsibility for past violent acts toward intimate partners. Except for the conviction in 2003 for assaulting S and the conviction in 2015 involving T, the prosecutor told the jury in closing arguments, defendant had been "let off the hook every single time."

As the Supreme Court stated in addressing the state's harmless error argument in *Skillicorn*:

> "[T]he state used [the other misconduct evidence] as propensity evidence, encouraging the jury to decide the case based on impermissible character-based reasoning. Such reasoning carries a risk of causing the verdict to be based on unfair prejudice, and here, the prosecutor highlighted defendant's past driving, noting that he had not taken responsibility for it and that he posed a danger to children in the neighborhood. Propensity evidence also carries a risk of causing the verdict to be based on an overestimation of the probative value of the evidence."

367 Or at 494.

The convictions on Counts 10 and 12 involved additional and related conduct in the February 20, 2016, incident

---

[11] In *State v. Hess*, 342 Or 647, 662, 159 P3d 309 (2007), the Supreme Court held that, assuming *arguendo* that the prior conviction requirement in ORS 163.465(2)(b) (public indecency) was an "element" of the crime that the state must prove to a jury, a defendant's judicial admission of a prior conviction established the fact of the prior conviction conclusively and relieved the state of its burden to prove that element of the crime. It concluded, therefore, that unless the state demonstrated that the fact of the admission constituted otherwise relevant evidence, the evidence of the prior conviction should have been excluded. *Id.* at 662-64. In *State v. Brostrom*, 214 Or App 604, 607, 167 P3d 460 (2007), *rev den*, 344 Or 109 (2008), we held that the reasoning of *Hess* likewise applied to a defendant's stipulation to the existence of prior convictions in a prosecution for fourth-degree assault under ORS 163.160.

for which defendant was convicted of fourth-degree assault (Count 11). The underlying acts included a threat against T to find out what she had told police about an earlier incident involving domestic violence (Count 10), and an act of criminal mischief involving the car T was driving as she made her escape from defendant's attack (Count 12). In his closing argument, the prosecutor did not distinguish among those acts and the assaults in reminding the jury that defendant had not been held accountable for his past violent acts. Because we cannot say there was little likelihood that the erroneous admission of the other misconduct evidence affected the verdicts on Counts 10 and 12, we conclude that the error was not harmless with respect to the convictions on those counts.

The state does argue that the error was harmless with respect to the possession of methamphetamine conviction (Count 3), which involved an incident in 2015 where defendant also was charged with assaulting T (Count 2), but the jury acquitted him of the latter charge. Defendant has developed no argument as to how the erroneous admission of the other misconduct evidence would constitute harmful error with respect to the drug conviction. *See State v. Lotches*, 331 Or 455, 487, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) ("A defendant in a criminal case assigning error to the exclusion or admission of evidence must establish that the error was not harmless."); *see also State v. Nguyen*, 293 Or App 492, 498, 429 P3d 410 (2018) ("[D]efendant has the burden to demonstrate that the error affected a substantial right."). Accordingly, we affirm the conviction on Count 3.

Finally, as discussed above, *see* 310 Or App at 118 n 1, in addition to the assault convictions, several of defendant's other convictions (burglary (Count 4) and two counts of coercion (Counts 5 and 9)) must be reversed in light of the conceded errors in the nonunanimous verdicts.

Convictions on Counts 1, 4, 5, 7, 9, 10, 11, and 12 reversed and remanded; remanded for resentencing; otherwise affirmed.