Argued and submitted August 1, 2019; reversed and remanded March 10; on respondent's petition for reconsideration filed April 14, reconsideration allowed by opinion June 30, 2021
See 312 Or App 733, 489 P3d 630 (2021)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RICKY ALLEN LEVASSEUR,
*Defendant-Appellant.*

Lane County Circuit Court
16CR73224; A166406

483 P3d 1167

Defendant was convicted of first-degree kidnapping, ORS 163.235, attempted first-degree sodomy, ORS 163.405(2)(b) and ORS 161.405, first-degree sexual abuse, ORS 163.427, and fourth-degree assault, ORS 163.160(2). The state alleged that he isolated, assaulted, sexually abused, and tried to sodomize a woman as she walked home. The state sought to introduce evidence of defendant's prior convictions, where he had engaged in similar patterns of behavior. The trial court ruled that evidence of defendant's prior convictions was admissible under OEC 404(3). Using the factors established in *State v. Johns*, 301 Or 535, 725 P3d 312 (1986), *overruled by State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), and after OEC 403 balancing, the trial court concluded that the prior convictions were relevant under a nonpropensity theory of relevance—to prove that defendant acted with sexual intent. On appeal, defendant assigns error to the admission of the prior convictions, arguing that they were not relevant for a nonpropensity purpose and thus inadmissible under OEC 404(3). *Held*: Under *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), the trial court erred by admitting evidence of defendant's prior convictions. The prior convictions were not relevant for a nonpropensity purpose (*i.e.*, other than to show that he acted in conformity with a character trait to assault women for sexual purposes). Further, the error was not harmless as to any of the counts given the severely prejudicial nature of propensity-based reasoning.

Reversed and remanded.

Clara L. Rigmaiden, Judge.

Meredith Allen, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.*

MOONEY, J.

Reversed and remanded.

_____

* Egan, C.J., *vice* Hadlock, J. pro tempore.

**MOONEY, J.**

A jury convicted defendant of first-degree kidnapping, ORS 163.235, attempted first-degree sodomy, ORS 163.405(2)(b) and ORS 161.405, first-degree sexual abuse, ORS 163.427, and fourth-degree assault, ORS 163.160(2). He appeals the trial court's judgment of convictions, raising five assignments of error. Because we conclude, as defendant contends in his first two assignments of error, that the trial court erred in admitting evidence of defendant's prior convictions (other-acts evidence)[1] under OEC 404(3), and because that admission was not harmless, we reverse defendant's convictions on that basis and do not address defendant's fourth or fifth assignments of error. We briefly address defendant's third assignment of error below.

We review the trial court's OEC 401 relevancy determinations for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). We likewise review the court's decision to admit other-acts evidence for errors of law. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017); *State v. Wright*, 283 Or App 160, 168, 387 P3d 405 (2016). And, finally, we review the court's ultimate determination as to whether evidence is unfairly prejudicial under OEC 403 for abuse of discretion. *State v. Towers*, 224 Or App 352, 357, 197 P3d 616 (2008).

The relevant facts are undisputed. During the late-night hours of November 4, 2015, the victim in this case, S, was walking home from her friend's house along Highway 99 in Eugene when she spotted a white car driving northbound. She noticed that the driver was watching her over his shoulder. After turning west down a poorly lit road, she saw a man watching her from the side of the street. She suspected that he was the driver of the white car. He was large and wore a black "skeleton" face mask and a dark hooded sweatshirt. S saw his "light" eyes and facial hair protruding from underneath the mask. He greeted her.

---

[1] We acknowledge that the Oregon Supreme Court referred to other-acts evidence as "uncharged misconduct evidence" in *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021). We use the term "other-acts evidence" broadly to include evidence of other crimes, wrongs, or acts generally, and to defendant's prior criminal acts and convictions in particular, none of which are charged in this case.

Frightened by the man, S crossed the street. He also crossed. He asked if she was lonely, and she told him to leave her alone. He refused. Instead, he approached her, grabbed her from behind, tackled her to the ground, struck her in the face, and forced her head into the dirt. S smelled something "chemically." Afraid that the man was using chloroform, S tried hitting, scratching, and screaming, but he overpowered her and pinned her to the ground. She stopped screaming and momentarily surrendered to the man's force. He took her up a berm away from the street and threw her on the ground inside a small clearing, which was surrounded by a chain link fence, blackberry bushes, and trees. Its location was "higher up [from the street] and away from sight."

S again began to resist, and the man covered her eyes by pulling her stocking cap over her face and placing his own skeleton mask over her head. The two then fought against the blackberry bushes, which scratched S's body. The man straddled S from behind, squeezed her in between his knees, and groped her breasts, which had become exposed as he assaulted her. The man told S that she had a choice between giving him "oral sex or anal sex." S responded by saying that she lived nearby, hoping that would cause him to take her home where she could trigger her security alarm and alert the police. He replied that he would take her home and make her watch as he raped her mother and sister.

The man picked S up by her shoulders and walked her blindfolded toward the street. S resisted, slipped out of the stocking cap and skeleton mask, and attempted to run away, scratching his face and pushing him backward. The man grabbed her, but S slid out of her shirt and sweatshirt. She was finally able to flee, leaving some of her personal belongings at the scene, including her purse, shirt, sweatshirt, stocking cap, and a short hair extension. Once home, she called the police.

The police immediately began their investigation. They brought S to the hospital and provided her with a sexual assault examination. Nurses scraped her nailbeds to preserve DNA evidence, and they documented her wounds. She had scratches on her torso, face, and lips, a bruise on her eye, and a large bump on her head. Officers searched

the scene of the assault and found the personal belongings that had been left behind as S ran from defendant. They also found a skeleton face mask. The police sent the mask and S's fingernail swabs to the Oregon State Police crime lab for DNA testing. Several months later, the extracted DNA returned a match to defendant, who was in the state's DNA database. A later analysis of DNA taken directly from defendant's cheek swab confirmed the match. Defendant was arrested and charged with first-degree kidnapping, attempted first-degree sodomy, first-degree sexual abuse, and fourth-degree assault.

We turn to the other-acts evidence. Defendant had a prior conviction that involved an incident that occurred in the early morning hours of February 11, 1989. Defendant had stopped his vehicle alongside a 17-year-old girl and offered her a ride home. She refused and kept walking, but he drove ahead to ambush her. As she unknowingly approached defendant's location, he emerged from the car with a knife, telling her to do what he said. She tried to get away, but he grabbed her arm and forced her into the back-seat. He then drove her to a secluded area and raped her.

Defendant's second prior conviction was based on events that occurred in the early morning hours of December 2, 2003, when defendant drove to a parking lot where he selected another victim as she walked to work. On that occasion, he wore a hooded sweatshirt, a stocking cap, and a surgical mask over his face. The victim noticed defendant following her, and she tried to flee. Defendant reacted by chasing her through an abandoned alley, tackling her, and pinning her to the ground. The victim screamed for help, but defendant told her that he would hurt her if she did not submit to him. He then sexually assaulted her. When a bystander ran to the scene, defendant stopped and fled.

The question of whether to admit evidence of defendant's prior crimes came before the trial court on fully briefed, dueling motions presented at the same pretrial hearing: a motion to allow prior-acts evidence from the state and a motion to exclude prior-acts evidence from defendant. The motions contained similar representations of the prior crimes as well as the conduct underlying the pending

charges. Counsel stipulated to those summary descriptions at the hearing. Defendant argued that the evidence should be excluded pursuant to OEC 404(3) because it was not relevant for a nonpropensity purpose and that, even if it were, the danger of unfair prejudice substantially outweighed any probative value. Defendant further argued that the evidence was not admissible under OEC 404(4), because that rule applies only to child sexual abuse cases and is, therefore, not applicable. The state argued that the convictions were relevant to prove (1) defendant's identity and (2) his motive and intent, and that any potential prejudicial effect did not outweigh the probative value of that evidence. It argued further that, in any event, the evidence was admissible under OEC 404(4).

The trial court took the matter under advisement and later ruled from the bench. The court explained its analysis, including, in particular, its use of the questions articulated in *State v. Johns*, 301 Or 535, 725 P2d 312 (1986), *overruled by State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021),[2] in determining relevance, and the balancing process it conducted under OEC 403 to ensure fairness. Specifically, it found that defendant's prior crimes and those alleged in this case were sufficiently similar for the other-acts evidence to be relevant to his sexual intent, but not sufficiently similar to prove identity. It also found, as part of its analysis, that the probative value of the prior crimes was substantial, and that the value was not substantially outweighed by the danger of unfair prejudice. The court therefore ruled that it would allow evidence of the prior crimes as evidence of intent. At the time the court ruled, it also advised counsel that it would instruct the jury not to consider the other-acts evidence unless it first found that defendant had, in fact, committed the acts alleged in the current case and then only as evidence of defendant's

---

[2] As we further explain below, *Johns* concerned the admissibility of evidence under a "doctrine of chances" theory of relevance. Here, the trial court indicated, correctly, that the doctrine of chances does not apply in this case. It nevertheless considered the *Johns* questions in its relevancy analysis. At the time, the Supreme Court ruled that it was not inappropriate for a court to do so. *State v. Turnidge (S059155)*, 359 Or 364, 442 n 43, 374 P3d 853 (2016), *cert den*, ___ US ___, 137 S Ct 665 (2017). But, as noted, *Skillicorn* has since overruled *Johns*.

intent.[3] The court did not proceed to an OEC 404(4) analysis because, given its ruling under OEC 404(3), it did not need to do so.

At trial, defendant testified and denied any involvement in the incident. The state presented S's testimony about the details of the attack and the attacker's features, all of which were consistent with defendant's appearance, including his facial hair, build, and height, the prior-acts evidence, DNA evidence, written statements that defendant had made during a sex offender treatment program explaining his desires to kidnap and sexually assault women on a random basis, photographs of defendant's facial scratches, and photographs showing that defendant had purchased the skull mask found at the scene.

At the close of all the evidence, defendant moved for a judgment of acquittal on the first-degree kidnapping count, arguing that the state did not present evidence from which a reasonable juror could infer that he actually kidnapped S. The trial court denied that motion. After closing arguments, and consistent with its pretrial rulings, the court instructed the jury that it could consider the other-acts evidence as evidence of defendant's intent only if it first found that defendant, in fact, committed the acts at issue in the present case. The jury unanimously returned guilty verdicts on all counts, and the court entered a judgment of conviction.

Relevant evidence is generally admissible. OEC 402. Evidence that is relevant may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. OEC 403. Moreover, OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that

---

[3] *State v. Leistiko*, 352 Or 172, 185-86, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012), places a procedural requirement on courts to provide certain limiting instructions to the jury in cases where the state offers prior bad acts evidence under a doctrine of chances theory of relevance. This is not a doctrine of chances case and the instruction was not necessary. *See Turnidge (S059155)*, 359 Or at 445 ("[S]uch a[ *Leistiko*] instruction is not required when prior bad acts evidence is admitted for other relevant purposes."). The fact that it was unnecessary is not relevant to our analysis.

the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In other words, OEC 404(3) bars the use of other-acts evidence "to prove that a person has a propensity to engage in certain types of behavior and that the person acted in conformance with that propensity on a particular occasion. In short, it prohibits 'propensity evidence.'" *Skillicorn*, 367 Or at 476.

When the state seeks to admit other-acts evidence, the trial court must

"determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a nonpropensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403."

*Baughman*, 361 Or at 404. In this case, the trial court concluded that the evidence was admissible as nonpropensity evidence under OEC 404(3), and, because of that, it did not conduct an OEC 404(4) analysis. The court's admission of defendant's prior convictions under OEC 404(3) is the only question before us.

In the time that has passed since the trial court ruled on the state's motion, the Supreme Court issued its opinion in *Skillicorn* and clarified the OEC 404(3) boundaries of admissibility for other-acts evidence. In doing so, it overruled *Johns* "to the extent that" *Johns* held that other-acts evidence could be admitted under the doctrine of chances as propensity evidence. *Skillicorn*, 367 Or at 493.

*Skillicorn* makes clear what *Johns* did not: Other-acts evidence is not admissible under OEC 404(3) under the doctrine of chances—or any other theory of relevance—to

allow a party to argue propensity. To the extent that propensity evidence is admissible, it is under OEC 404(4), which is not at issue in this case. *See State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015). When other-acts evidence is offered under OEC 404(3), the proponent must articulate a theory of relevance that does not logically "depend[ ] on propensity reasoning." *Skillicorn*, 367 Or at 483. If the theory connecting the uncharged misconduct to the fact or inference it is offered to prove relates to defendant's character or propensities, it is not admissible under OEC 404(3). *Id.*

The state's theory of admissibility here is that, because defendant attacked his victims in the two prior incidents under remarkably similar circumstances, it is more likely that, when he assaulted S in this case, he did so with a sexual purpose. We are mindful of the state's theory, and the court's instruction, that the evidence was conditionally admissible only if the jury found that defendant had assaulted S. Nevertheless, that theory fundamentally relied on propensity-based reasoning. It ultimately reduced to an argument about defendant's character: that, when defendant isolates and attempts to grab women, he does so in order to sexually assault them—rather than to simply assault or rob them, or to commit other, nonsexual crimes. The state's theory of admissibility required the jury to infer from defendant's prior crimes that he has a propensity to assault women for sexual purposes, and that he acted in conformity with that propensity in this case. That is propensity-based reasoning. We recognize that, when the trial court ruled on the admissibility of the other-acts evidence, *Skillicorn* had not yet been decided. But *Skillicorn* is now the law and we must, therefore, conclude that the court erred by admitting evidence of defendant's prior crimes and convictions. Defendant's prior crimes and convictions are not admissible under OEC 404(3) under the state's theory of relevance—to show sexual purpose.

Having concluded that the trial court erred in admitting evidence of defendant's prior crimes and convictions, we turn to the question of whether that error was harmless. Evidentiary error is harmless when "there is little likelihood that the particular error affected the verdict."

*State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In making that determination, among other factors, "we assess any differences between the quality of the erroneously admitted evidence and other evidence admitted on the same issue." *State v. Wirkkala*, 290 Or App 263, 271, 414 P3d 421 (2018) (internal quotation marks and citations omitted).

The state argues that the admission of defendant's prior crimes and convictions was harmless because the physical evidence of defendant's presence at the scene was "overwhelming," as was the evidence of his state of mind. It asserts that defendant's own writings, his testimony, the DNA evidence, photographic evidence, and S's testimony would be enough, on its own, to convict defendant, and that the testimony from defendant's former victims was effectively redundant. We do not agree.

Inviting the jury to engage in propensity-based reasoning is severely prejudicial. *Skillicorn*, 367 Or at 494. Such reasoning "carries a risk of causing the verdict to be based on an overestimation of the probative value of the evidence." *Id*. When jurors overvalue severely prejudicial evidence, we cannot say that the erroneous admission of the evidence had little likelihood of affecting the jury's verdict. In this case, S's credibility was a critical issue because, despite the physical evidence of defendant's interaction with S and defendant's journal entries, S was the only person to testify about the actual allegations of sexual abuse and attempted sodomy. Having defendant's prior victims testify about his patterns of behavior (*i.e.*, his character) significantly bolstered S's credibility. We cannot conclude that the prejudice inherent in the prior crimes evidence played no role in the jury deliberations—particularly with regard to S's credibility. *See State v. Nguyen*, 293 Or App 492, 500-01, 429 P3d 410 (2018) (concluding that evidence leading to inferences that the defendant committed a certain crime, on its own, cannot overcome the prejudicial effect of improper misconduct evidence).

With regard to the kidnapping conviction in particular, we cannot say that the admission of defendant's prior crimes was harmless in light of its prejudicial effect. Although there was a significant amount of admissible

incriminating evidence that defendant kidnapped S,[4] it can hardly be disputed that the admission of propensity evidence was at least an implicit invitation to the jury to accept S's testimony as true and to accept that defendant was guilty as charged because he had done this sort of thing before. *See Wirkkala*, 290 Or App at 271 (considering "the importance of the erroneously admitted evidence to a party's theory of the case"); *State v. Jones*, 285 Or App 680, 691, 397 P3d 595 (2017) ("If erroneously admitted evidence relates to a central issue in the case, it is more likely that the error substantially affected the verdict."). The jury, no doubt, could have reached the same conclusion without the other-acts evidence, but we cannot say that there was "little likelihood that the [trial court's] error affected the verdict." *Davis*, 336 Or at 32.

Whether admission of the other-acts evidence was harmless as to the assault conviction is arguably a closer call. But the state's harmlessness argument in this court is at odds with its argument in the trial court that the other-acts evidence was "essential to the state's ability to prove that the defendant, as opposed to another, committed the charged crimes[,]" and that, despite the DNA and other physical evidence, the other-acts evidence was "critical to establish *modus operandi* and the identity of the defendant

---

[4] We briefly turn to the merits of defendant's third assignment of error related to his motion for judgment of acquittal (MJOA) on the first-degree kidnapping charge. Viewing the admissible evidence in the light most favorable to the state, *State v. Bivins*, 191 Or App 460, 462, 83 P3d 379 (2004), a jury could reasonably have concluded that (1) defendant moved the alleged victim, S, to a "qualitatively different" location than the one in which he first encountered her, *State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *aff'd as modified*, 349 Or 604, 247 P3d 759 (2011); (2) that movement represented a "substantial interference" with S's personal liberty, *State v. Eastman*, 282 Or App 563, 566, 385 P3d 1182 (2016), *rev den*, 361 Or 311 (2017); and (3) the kidnapping was not "merely incidental to other related, but independent, crimes," *State v. Washington*, 266 Or App 133, 138, 337 P3d 859 (2014). *See also State v. Opitz*, 256 Or App 521, 535, 301 P3d 946 (2013) (explaining that the "hallmark" question to determine "qualitative difference" is "whether the difference between the starting and ending places promotes or effectuates a substantial interference 'with another's personal liberty'" (quoting ORS 163.225(1))). Accordingly, the evidence would have satisfied the requirements of ORS 163.225(1)(a) under the "asportation" theory of kidnapping, and the trial court therefore did not err in denying defendant's MJOA. Because the evidence would have been sufficient on that ground, we need not address whether it would have been sufficient to defeat defendant's MJOA on the "secret confinement" theory of kidnapping. ORS 163.225(1)(b).

as S's attacker." Although the jury was not permitted to consider the other-acts evidence for purposes of identity, we have no reason to believe that it did not consider it significant for the other reasons that the state advanced at trial. We further think it likely that the testimony of defendant's prior victims bolstered S's credibility with respect to all charges here. As a result, we conclude that the error was not harmless on any count.

Reversed and remanded.