Argued and submitted January 18, reversed and remanded June 23, 2022

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROY ALLEN TRAVIS,
*Defendant-Appellant.*

Marion County Circuit Court
18CR77934; A173434

513 P3d 614

In this appeal from a conviction for multiple sex crimes, defendant challenges the trial court's admission of a prior conviction for first-degree rape. The state concedes that the prior conviction was not admissible for a noncharacter purpose under OEC 404(3), but argues that the evidence was admitted for a permissible character purpose under OEC 404(4). Defendant contends that the evidence was not considered for an OEC 404(4) purpose and was unfairly prejudicial if admitted for that purpose. *Held*: The record did not establish that the trial court considered the challenged evidence for a character purpose under OEC 404(4). Absent such consideration, the trial court could not have properly balanced the probative value against the danger of unfair prejudice when the evidence was used for a character purpose. On remand, the trial court must consider whether the evidence should be received under a correct analysis of OEC 404 and OEC 403 and whether a new trial is required or appropriate.

Reversed and remanded.

Susan M. Tripp, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Mooney, Presiding Judge, and Pagán, Judge, and Hadlock, Judge pro tempore.*

PAGÁN, J.

Reversed and remanded.

_____
\* Pagán, J., *vice* DeHoog, J. pro tempore.

**PAGÁN, J.**

In this criminal appeal, defendant contests his convictions of multiple sex crimes occurring over the course of approximately 13 years. The victim of those sex crimes was a woman who was at first defendant's stepdaughter, M, and later, his wife. On appeal, defendant challenges the trial court's decision to admit certain evidence of defendant's prior conviction of first-degree rape, committed against his teenaged biological daughter, and jury instructions allowing for nonunanimous guilty verdicts. Because the jury returned unanimous guilty verdicts for each conviction, we reject that argument for the reasons stated in *State v. Ciraulo*, 367 Or 350, 478 P3d 502 (2020), *cert den*, 594 US ___, 141 S Ct 2836, 210 L Ed 2d 950 (2021).

On appeal, the state concedes that the evidence of defendant's prior rape conviction was not properly admitted for a noncharacter purpose under OEC 404(3). In light of the record and our recent cases explaining that sexual motive is generally not a permissible reason to admit evidence for noncharacter purposes, we accept that concession as well taken. *See State v. Martinez*, 315 Or App 48, 56-57, 499 P3d 856 (2021) (evidence of prior conduct to show sexual purpose was impermissible character evidence under OEC 404(3)); *State v. Levasseur*, 309 Or App 745, 753, 483 P3d 1167, *adh'd as modified*, 312 Or App 733, 489 P3d 630, *rev den*, 368 Or 788 (2021) (same); *State v. Terry*, 309 Or App 459, 463-64, 482 P3d 105 (2021) (same). Due to that concession, the resolution of this appeal reduces to whether the evidence was also considered for a permissible character purpose under OEC 404(4) and, if considered for that purpose, whether the evidence had to be excluded as unfairly prejudicial under OEC 403. We conclude that the record does not support a finding that the trial court considered the evidence for a OEC 404(4) purpose, and therefore reverse and remand.

We review a trial court's determination of relevance under OEC 401 for errors of law. *State v. Stockton*, 310 Or App 116, 123, 483 P3d 657 (2021). Likewise, we review a trial court's determination that other acts evidence is relevant and admissible under OEC 404(3) or OEC 404(4) for legal error. *Id*. Whether otherwise admissible evidence should be

excluded as unfairly prejudicial under OEC 403 is reviewed for abuse of discretion. *Levasseur*, 309 Or App at 747. In the procedural history of this case, the challenged evidence was deemed relevant and admissible during a pretrial hearing; thus, our review is limited to the record that was before the trial court at that time. *See State v. Warren*, 291 Or App 496, 510, 422 P3d 282, *rev den,* 363 Or 744 (2018).

Given the concession about whether the challenged evidence was admissible under OEC 404(3), the relevant facts are largely procedural and are drawn from each side's arguments as well as the court's reasoning in admitting the evidence.

As the proponent of the challenged evidence, the state moved *in limine* to admit "evidence of Defendant's sexual abuse of his daughter, and statements made by Defendant regarding his sexual attraction to children." The state proposed to admit a certified copy of defendant's 1992 conviction for first-degree rape, "interview statements made by *** defendant's daughter in the prior case," and a "statement from a family friend" that purported to contain an admission by defendant that acknowledged the sexual abuse problem and that he was seeking help from a counselor.[1] The state also proposed to have defendant's biological daughter testify about the rape that gave rise to the 1992 conviction.

The state made clear to the trial court that it was offering the evidence under a noncharacter theory *and* a character theory. First, the state argued that the evidence was relevant and admissible as noncharacter evidence to "prove defendant's sexual motive in offending the child victim in the current case under OEC 404(3) and 403." The state suggested that the similarities between the victim and circumstances underlying the 1992 conviction were indicative of a class of victim that was the object of defendant's sexual offenses, which was an explanation of "the driving force behind this behavior," and therefore why the evidence was relevant and admissible as noncharacter evidence under OEC 404(3). The state then argued, under a character

---

[1] Although the state sought to admit portions of a police interview and statement from a family friend, that evidence was not presented to the jury at trial.

theory, that the evidence was "relevant and admissible under OEC 404(4) and 403 to prove sexual attraction to children and the defendant's propensity to sexually abuse children as alleged in this case." The state contended that the evidence was probative of defendant's "propensity to sexually offend this class of victim."

At the pretrial hearing, defendant argued that the probative value of "these prior bad acts *** is substantially outweighed by prejudice." After suggesting that admission of the "prior bad acts" implicated "prior jeopardy issues" as well as "the presumption of innocence," defendant argued "that is, I think, 401, it's prejudicial *** obviously, and I don't think the balancing effect that is cited by 403 and 404 even gets close to allowing that prior information in, and so I would object most wholeheartedly." Defendant also contended that the victim from the 1992 rape conviction and the present allegations were not "a similar class of people," because the "current person *** is his spouse, it's not his daughter."

After both sides had argued their points, the court observed,

> "It's an interesting interaction between 403 and 404. The admission of evidence under 404 remains subject to the balancing under 403, so let's—getting down to the heart of the matter in this case, the questions are really getting down to the basis of is it more prejudicial than probative?

> "Certainly, appellate courts have found that prior abuse of different victims is a relevant factor, an admissible factor to show that the defendant had a sexual intent in the defendant's behavior.

> "So I think that this case, the admissibility is just somewhat a standard admissibility under [*State v.*] *Johns*, [301 Or 535, 725 P2d 312 (1986),] that it goes to the issue of motive, opportunity, intent, plan, et cetera, absence of mistake or accident. I think that in this case the sexual intent of the alleged sexual intent of the defendant is relevant to the issue of whether or not in this situation this type of behavior was with a motive or plan to have sexual intercourse with a child.

> "* * * * *

"So then finally as to more prejudicial than probative, I guess the question is whether or not the Court can give a jury instruction, if it lets this evidence in, to tell the jury to follow the rules and that the evidence of prior sex abuse of a daughter is not proof that the defendant sexually abused this daughter; it only goes to the motive, intent, plan, knowledge evidence. And for that reason, I think the Court could give a limiting instruction[.]"

The court allowed the challenged evidence to be presented to the jury. At trial, defendant's biological daughter, the victim of the rape giving rise to the 1992 conviction, briefly testified. During her testimony, the state offered the certified copy of the 1992 judgment and that was admitted. The jury was instructed that it "may only consider [the other acts] evidence for the purpose of deciding whether the defendant had a particular motive, purpose, plan, or sexual interest in children." As noted, the jury returned unanimous guilty verdicts for each of the 12 charges.

On appeal, aside from the argument—conceded by the state—that the challenged evidence was not admissible as noncharacter evidence under OEC 404(3), defendant argues that the OEC 403 balancing was necessarily flawed because the trial court did not consider the propensity purpose for admitting the evidence under OEC 404(4). In his view, without considering the correct purpose for admission, the trial court assigned too much probative value to the challenged evidence and therefore abused its discretion in balancing under OEC 403.

The state argues that we should affirm the judgment of conviction because "even if the prior rape evidence was propensity evidence (rather than nonpropensity evidence) and therefore inadmissible under OEC 404(3), it was admissible propensity evidence under OEC 404(4) and [*State v.*] *Williams*[, 357 Or 1, 346 P3d 455 (2015)]." According to the state it does not matter that the trial court incorrectly admitted the evidence under OEC 404(3) because the court "understood that the other-acts evidence was offered to establish defendant's sexual interest in children (or, put another way, his propensity to sexually abuse children), and it conducted its OEC 403 balancing accordingly."

With the facts and arguments in mind, we turn to our analysis. OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by:

"(a)   [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)   The rules of evidence relating to privilege and hearsay;

"(c)   The Oregon Constitution; and

"(d)   The United States Constitution."

That rule was enacted as an exception to the general OEC 404(3) rule prohibiting character evidence to show a person acted in conformity with their character. *Williams*, 357 Or at 15. The evidence proposed for admission under OEC 404(4) must still be logically relevant to a fact at issue in the trial, OEC 401, and is subject to exclusion if the probative value is substantially outweighed by the danger of unfair prejudice flowing from the evidence. *Id.* at 20; OEC 403. "When other acts evidence goes only to character and there are no permissible inferences the jury may draw from it, it is more likely that the evidence will be excluded." *Id.* (quotation marks omitted). "Such evidence generally will have little or no cognizable probative value, and the risk that the jury may conclude improperly that the defendant had acted in accordance with past acts on the occasion of the charged crime will be substantial." *Id.*

To properly analyze the purpose for which other acts evidence is offered and weigh the probative value against the prejudicial effect for that purpose, courts should follow a two-step framework. *State v. Baughman*, 361 Or 386, 404-05, 393 P3d 1132 (2017).

"When a party objects to the admission of other acts evidence, a trial court first should determine whether the proffered evidence is relevant for one or more nonpropensity purposes, under OEC 404(3). If it is, then the court should determine, at step two, whether the probative

value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. If the trial court determines that the evidence is relevant for a non-propensity purpose under OEC 404(3) and admissible under OEC 403, then it need not determine whether the evidence also is admissible under OEC 404(4) and OEC 403. However, if a trial court determines that proffered evidence is not relevant for a nonpropensity purpose, then it must determine whether that evidence nevertheless is otherwise relevant under OEC 404(4) and, at step two, whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, under OEC 403."

*Id*. (footnote omitted). Inherent in that two-step analysis, and paying respect to the admonition about the likely low probative value and probable severity of unfair prejudice for purely character evidence expressed in *Williams*, is the recognition that OEC 403 balancing is dependent on the purpose for which the other acts evidence is offered. *Id*. at 405 (the decision about relevance at step one will have a "significant impact" on decision whether to admit at step two). The prescribed framework of determining relevancy for a noncharacter purpose under OEC 404(3), then balancing under OEC 403, before considering a character purpose under OEC 404(4), helps ensure that the purpose-focused balancing is not clouded by aggregating probative value under OEC 404(3) *and* OEC 404(4) or the danger of unfair prejudice from evidence admitted under those two very different analyses.[2] *See State v. Tena*, 362 Or 514, 525-26, 412 P3d 175 (2018) ("[O]nce a court determines that evidence of other acts is not probative for a nonpropensity purpose under OEC 404(3), it may then turn

---

[2] For instance, if a trial court erroneously concluded that a piece of challenged evidence was relevant for a noncharacter purpose, it would likely assign a relatively high probative value to that evidence and would therefore be unlikely to exclude the evidence under OEC 403. The same is not true if the evidence was only relevant for a character purpose, because of the "little or no cognizable probative value" of pure character evidence. In a nutshell, because noncharacter evidence is more likely to have high probative value, by aggregating both noncharacter and character evidence into a single OEC 403 balancing, it would be unlikely that the danger of unfair prejudice would substantially outweigh the probative value of the evidence. *Baughman*'s segregated analysis helps guide trial courts away from that unfortunate analytical pitfall.

to whether the evidence nevertheless is admissible under OEC 404(4).").

In arguing for affirmance despite the error in admitting the challenged evidence, the state cites our recent case of *Terry*. In that case, we concluded that the trial court had not abused its discretion under OEC 403 to admit evidence of the defendant's prior conviction for unlawful sexual penetration of a 10-year-old relative after determining the evidence was relevant to both noncharacter and character purposes under OEC 404(3) and OEC 404(4) respectively. *Terry*, 309 Or App at 465. Although we concluded that the trial court erred as a matter of law by determining that the proposed other acts evidence was relevant for a noncharacter purpose, because the trial court had expressly determined the evidence was relevant for character under OEC 404(4), it had properly accounted for the limited probative value generally inherent in OEC 404(4) evidence. *Id.* And although we are unsure of why the trial court did not stop after the first *Baughman* step of determining admissibility for noncharacter purposes under OEC 404(3), by specifically considering the evidence as relevant for character purposes under OEC 404(4), we could be sure that it had considered the limited probative value of the evidence under OEC 404(4) when conducting the OEC 403 balancing. To be clear, our decision in *Terry* was not based on an implicit finding of admissibility under OEC 404(4), such as the state suggests exists in this case, but rather the explicit finding by the court that the evidence was admissible for a character purpose under OEC 404(4), and balancing undertaken with that purpose in mind.

Contrastingly, in *Martinez*, we concluded that the trial court had admitted the other acts evidence only on the erroneous basis of noncharacter purpose under OEC 404(3). 315 Or App at 59. Although the state argued during the pretrial hearing that the evidence was admissible for both noncharacter and character purposes, the trial court admitted the evidence, stating: "So on a 403 balancing test, I think the probative value exceeds the prejudicial effect. *And I think there is a non-propensity need for the State to have this evidence in.* So unless either side wants me to get into the 404

area, I don't think I need to." *Id.* at 52 (emphasis in *Martinez*).[3] After concluding that the evidence was not admissible for a noncharacter purpose, we rejected the state's claim that the court "implicitly" accepted the evidence on the OEC 404(4) basis. *Id.* at 58. We reversed the convictions and remanded to the trial court to determine "whether, after conducting a correct analysis under OEC 404 and OEC 403, other acts evidence should again be received and whether a new trial is required or appropriate." *Id.* at 59 (citing *Baughman*, 361 Or at 410).

     In reviewing the record and the trial court's decision in this case, we do not understand the trial court to have considered whether the challenged evidence was relevant for a character purpose under OEC 404(4). Indeed, the trial court's reasoning confirmed that it was considering the challenged evidence under the *Johns* analysis,[4] and explained a list of the express OEC 404(3) theories of noncharacter relevance. At the time of the trial court's decision on the challenged evidence, *Johns* had long provided a framework for the admission of other acts evidence for noncharacter— OEC 404(3)—purposes. Much like the trial court did in *Levasseur*, the trial court here focused its analysis on the now-outdated *Johns* framework and how the proffered

-----

[3] That statement from the trial court in *Martinez*, plus the trial court's explicit determination that the evidence in *Terry* was relevant for both noncharacter and character purposes, illustrates some tension in *Baughman* regarding the steps for analyzing the admissibility of other acts evidence. Although the trial court may stop the analysis after determining that proposed other acts evidence is relevant for a noncharacter purpose, the proponent of the evidence has an interest in also determining admissibility for character purposes—both to provide flexibility in how that evidence is presented at trial, and, as *Terry* illustrates, to increase the likelihood of surviving appellate review. Although we do not read *Baughman* or its progeny as requiring a court to make an OEC 404(4) finding after determining that the other acts evidence is relevant and admissible under the OEC 404(3) and OEC 403 step, in light of the sea change to the analysis of other acts evidence presented by *State v. Skillicorn*, 367 Or 464, 479 P3d 254 (2021), we anticipate more call for courts to make both OEC 404(3) and OEC 404(4) findings.

[4] In *State v. Johns*, the court specifically considered whether other acts evidence was admissible for a noncharacter purpose of demonstrating intent through the "doctrine of chances." 301 Or 535, 725 P2d 312 (1986). *Johns* predated adoption of OEC 404(4) by 11 years and was largely overruled by *Skillicorn*. 367 Or at 493 ("[W]e overrule *Johns* to the extent that it holds that evidence of uncharged misconduct can be admitted under the doctrine of chances for the purpose of arguing that, because the defendant engaged in deliberate conduct before, it is likely that he engaged in it again during the charged incident.").

evidence would be probative of intent under that framework. *See Levasseur*, 309 Or App at 750 (noting trial court's reliance on *Johns* analysis in admitting other acts evidence). Moreover, the jury instructions clearly suggest that the court understood that it had admitted the evidence of the 1992 rape conviction "for the purpose of deciding whether the defendant had a particular motive, purpose, plan, or sexual interest in children." Taken in the context of the colloquy in the pretrial hearing and confirmed by the instructions given to the jury, the trial court admitted the challenged evidence solely on the basis of OEC 404(3).

That conclusion brings this case much nearer to *Martinez* than to *Terry*. Absent something more in the record to allow us to make a nonspeculative inference that a trial court did actually consider other acts evidence as relevant for an OEC 404(4) purpose and balance accordingly, we reject the state's argument that the trial court in this case did so by implication. The state's argument for an alternate basis for affirmance fails at the first step because "the facts of record [are insufficient] to support the alternative basis for affirmance." *State v. Booth*, 272 Or App 192, 199, 355 P3d 181 (2015) (citing *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), for three requirements for affirmance on basis other than on basis which lower tribunal ruled).

We also decline to accept the state's argument that labels—as in character, noncharacter, or propensity evidence—do not matter. While we agree, in principle, that challenges related to the distinction between noncharacter and character, or nonpropensity and propensity evidence is, in part, a problem arising from the labels attached through decades of litigation, it does not follow that the labels become worthless. *See, e.g., State v. Jackson*, 368 Or 705, 734-35, 498 P3d 788 (2021) (Garrett, J., concurring) (noting that Oregon courts have used the terms character and propensity interchangeably due to years of litigation about other acts evidence). Those labels, and particularly the reference to their associated provisions within the evidence code, signal a common understanding between the court and the parties discussing the proposed evidence. To be sure, the substantive content of an argument for or against the admission of

evidence is far more critical than labels to a court's under-standing of what it is being asked to rule on. *See State v. De Leon Say*, 319 Or App 271, 273, 510 P3d 979 (2022) (not-ing that trial court's substantive understanding of the state's theory of relevance for sexual predisposition evidence guided its balancing test). Nonetheless, those labels, if used precisely, can at least serve a valuable calibration point to ensure the meaning intended by the advocate is the meaning received by the court. *Terry*, 309 Or App at 461, 464 (noting both the label attached by the proponent and the substantive use at trial as indicative of the true purpose of the evidence); *Martinez*, 315 Or App at 57 (rejecting argument that refer-ence to "*Williams*" evidence during argument meant that the court implicitly admitted evidence for character purposes under OEC 404(4) when the parties did not invite the court to make an OEC 404(4) finding). For similar reasons, we reject defendant's argument that a labelling error is a sub-stantive error, at least in any categorical sense. *See De Leon Say*, 319 Or App at 273 (concluding that any labelling error the trial court may have made did not require reversal when the trial court applied an appropriate balancing test based on the court's understanding of the theory of relevance by the offering party). In sum, although the label attached to proposed evidence is not dispositive of the purpose for which a court considers it, the label still serves as a useful tool to ensure that the substantive argument conveyed is consistent with the substantive argument the court understood.

As we have determined that the admission of the challenged evidence was error, we review all pertinent por-tions of the record to determine if the error was harmless. *Stockton*, 310 Or App at 123. "As a matter of constitutional provision, statute, and rule, we may not reverse a judgment based on the erroneous admission of evidence if the error did not substantially affect defendant's rights, *i.e.*, was harm-less." *State v. Carrillo*, 304 Or App 192, 201, 466 P3d 1023, *rev den*, 367 Or 220 (2020). An error is harmless if there is little likelihood that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

The state charged defendant with five counts of second-degree sexual abuse for offenses alleged to have occurred between January 2005 and January 2007. The

state alleged various episodes that involved oral sex and vaginal sex while M was between 16 and 17 years old. In addition to the sex crimes that the state alleged occurred between 2005 and 2007, the state alleged that defendant committed the crimes of first-degree rape and strangulation for a 2018 episode, two counts of first-degree unlawful sexual penetration occurring between 2009 and 2018, and two counts of coercion occurring between November 2016 and June 2018.

In this case, the trial court's own reasoning for the state's need for the evidence is sufficient to convince us that the erroneous admission of the challenged evidence was not harmless. During the pretrial hearing, when conducting the OEC 403 balancing, the court observed that the state's need for the evidence was high because "there's no physical evidence available, based on the fact that the other witness [M's mother] who would *** have relevant testimony to talk about what did or did not happen unfortunately succumbed to an illness."[5] Although the evidence of the 1992 rape conviction admitted at trial was for a "single count of rape in the first degree," defendant's biological daughter testified that the sexual intercourse with her at age 15 "happened multiple times, mercilessly."

That testimony occurred at the end of the state's case in chief and would likely have served a strong bolstering effect to the testimony the jury had previously heard from M in this case.

As we understand the way the case developed, it reduced to a credibility contest between M and defendant. For his part, defendant denied that he had ever had any sort of sexual contact with M while she was younger than 18. Defendant denied ever forcing himself on M and said that she was a "full participant in all of this." During M's testimony, the state introduced some handwritten letters into evidence that she asserted were sent by defendant while defendant was still incarcerated for the 1992 rape conviction. M testified that the letters indicated that defendant

_____

[5] As noted, defendant was married to M's mother. She eventually died from complications from ALS, and after she died, defendant married her daughter—his stepdaughter, M.

"express[ed] his love" for her, despite never having met her at that point, and that the letters said, "I'm going to be your dad now and going to spend time with you." Defendant denied writing the letters and said he did not "recognize them at all," but later said that he may have communicated by phone and in writing with M and her brother "through their mother." In the absence of physical evidence corroborating the alleged sexual abuse, the relative levels of credibility of M and defendant were a "central factual issue." *See State v. Marrington*, 335 Or 555, 565-66, 73 P3d 911 (2003). Provided the tendency that the challenged evidence had to bolster M's credibility through impermissible character inferences about defendant, and how that related to a central factual issue of the case, we cannot say that there was little likelihood that the erroneous admission of that evidence affected the verdict.

On remand, we leave it to the trial court to determine "whether, after conducting a correct analysis under OEC 404 and OEC 403, other acts evidence should again be received and whether a new trial is required or appropriate." *Baughman*, 361 Or at 410.

Reversed and remanded.