Submitted February 28, 2022, convictions on Counts 3 and 4 reversed and remanded, remanded for resentencing, otherwise affirmed June 14, petition for review denied October 19, 2023 (371 Or 509)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESSIE CLARENCE EZELL,
*Defendant-Appellant.*

Multnomah County Circuit Court
18CR61669; A172723

532 P3d 496

Defendant was convicted of two counts of first-degree sodomy (Counts 1 and 3), and three counts of first-degree sexual abuse (Counts 2, 4, and 7). On appeal, he argues, among other things, that certain uncharged misconduct evidence was erroneously admitted, and that the trial court plainly erred when it accepted nonunanimous guilty verdicts on Counts 3 and 4. *Held*: The trial court did not err in admitting evidence of uncharged conduct when the court correctly concluded that the evidence was logically relevant for a permissible propensity purpose, it appropriately balanced the probative value against the danger of unfair prejudice, and it gave a limiting instruction that restricted the jury's use of the evidence specifically to the permissible purpose. The trial court plainly erred by accepting nonunanimous guilty verdicts on Counts 3 and 4, and those counts must be reversed and remanded.

Convictions on Counts 3 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

Katharine von Ter Stegge, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Powers, Judge, and Hellman, Judge.

POWERS, J.

Convictions on Counts 3 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.

**POWERS, J.**

A jury found defendant guilty and he was convicted of two counts of first-degree sodomy, ORS 163.405 (Counts 1 and 3), and three counts of first-degree sexual abuse, ORS 163.427 (Counts 2, 4, and 7).[1] The jury acquitted on one count of first-degree rape, ORS 163.375 (Count 5), and one count of first-degree sexual abuse (Count 6). In his first assignment of error, defendant challenges the trial court's decision admitting other-acts evidence. Defendant argues that the evidence was not admissible under OEC 404(3) or OEC 404(4), and that, in any event, it should have been excluded under OEC 403 when the trial court balanced its probative value against the risk of unfair prejudice. In his second and third assignments of error, defendant argues that the trial court plainly erred by instructing the jury that it could return nonunanimous verdicts, and by accepting nonunanimous guilty verdicts on Counts 3 and 4. *See Ramos v. Louisiana*, 590 US ___, 140 S Ct 1390, 206 L Ed 2d 583 (2020). In his fourth assignment of error, defendant argues that the trial court's plain error in instructing the jury that it could return nonunanimous verdicts constituted "structural error," and that the trial court thereby plainly erred in accepting the jury's verdicts on the counts on which he was convicted. We reverse and remand defendant's convictions on Counts 3 and 4, on which the jury returned nonunanimous guilty verdicts. We affirm the remaining convictions.

We first address defendant's second through fourth assignments of error. The state concedes that the trial court plainly erred by instructing the jury that it could return nonunanimous verdicts, and that the error was not harmless with regard to the verdicts on Counts 3 and 4, because those guilty verdicts were nonunanimous. *State v. Kincheloe*, 367 Or 335, 338-39, 478 P3d 507, *cert den*, 594 US ___, 141 S Ct 2837, L Ed 2d 951 (2020); *State v. Ulery*, 366 Or 500, 504, 464 P3d 1123 (2020). We agree, accept the state's concession, and exercise our discretion to correct the error as to Counts 3 and 4 for the reasons expressed in *Ulery*. 366 Or at

---

[1] Both statutes have been amended since the version applicable to defendant's charges, but the amendments do not have any effect on the issues in this case. We therefore cite the current versions of the statutes.

504 (explaining that the trial court could not have corrected error under then-controlling law, error was grave, and the defendant's substantial interest in a new trial outweighs the state's interest in avoiding expense and delay of retrial).

Defendant argues that the trial court's plain error in instructing the jury that it could return nonunanimous verdicts further constitutes "structural error[,] such that the harmless error analysis does not apply" and that we should, therefore, reverse and remand all of defendant's convictions, including the ones based on unanimous verdicts. The Oregon Supreme Court, however, has rejected that argument. *State v. Flores Ramos*, 367 Or 292, 296-320, 478 P3d 515 (2020). Accordingly, the instructional error does not provide a basis for reversal for the convictions that were based on unanimous verdicts—Counts 1, 2, and 7. Defendant acknowledges as much, and notes that his argument to us that *Flores Ramos* is wrongly decided is made to preserve that argument for further review. We reverse and remand Counts 3 and 4 on *Ramos* grounds and conclude that defendant is not entitled to reversal on those grounds on Counts 1, 2, and 7.

We next turn to defendant's first assignment of error, in which he argues that his convictions should be reversed and remanded based on the erroneous admission of other-acts evidence.[2] We consider that assignment in relation to the remaining convictions, Counts 1, 2, and 7. We first give a brief overview of the facts and procedural history, then discuss the legal framework and what evidence was before the trial court when it ruled on the admissibility of the evidence.

Before trial, the state filed a motion *in limine* to admit other-acts evidence, and defendant objected. The state anticipated offering testimony from both Cooper (defendant's mother-in-law) and Plancarte (a family friend) that each of them, on separate occasions, had walked in on defendant

---

[2] *See* OEC 404(3), which provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

watching pornography with his four-year-old daughter, P, in the room. In addition, according to the motion, the state anticipated that Plancarte would testify that when she walked in on defendant while he was watching pornography, he was masturbating, and P was in the room asleep at the time. The trial court ruled that evidence that defendant watched pornography while children were asleep in the room would not be admissible. The court deferred ruling on the remainder of the evidence until after an OEC 104 hearing. Because the OEC 104 hearing was not held until the state was close to resting, much of the trial evidence was before the court when it ruled on the motion. Prior to the OEC 104 hearing, the state presented evidence of the following facts.

During part of 2016, defendant lived in what was described as a "drug house" with his wife, Campynol, and two daughters, P and her younger sister M. A number of other people also lived in or stayed at the house during that time. Defendant's mother-in-law, Cooper, her boyfriend, and a family friend, Plancarte, lived there as roommates. There were a number of additional roommates or guests who would come and go, some sleeping in the living room, the backyard, and in cars. A few times, Plancarte got up at night and found people watching pornography in the living room. At times, Plancarte would find P alone in the living room watching pornography, because P wanted to watch TV but was not able to change the channel by herself.

Defendant, his wife, and daughters lived in the converted garage of the house. Two to three nights per week, the door to the converted garage would be locked, with defendant and one or both of his daughters in the room. Others in the house had noticed that defendant and P had a very close relationship. Defendant paid less attention to his other daughter, M. He spent a lot of time with P in the converted garage. Campynol worked the night shift, so, when she was present, she was often asleep during the day. P slept in her parents' bed. In late 2016, defendant had moved out of the house, while Campynol, P, and M remained there.

During early 2017, the Department of Human Services was investigating a report that P was being neglected. Campynol reported during the investigation that

P had been displaying sexualized behavior. When Campynol asked P about the behavior, P told her that defendant had "touched her butt."

During a subsequent CARES examination, there were signs that P had been neglected, including evidence of dental neglect and some missing teeth. During the CARES interview, P denied any sexual abuse. When P and her younger sister, M, tested positive for high amounts of methamphetamine, they were removed from Campynol's care and placed in foster care. While P was living with her resource parents, she continued to act in a sexualized manner. She disclosed that defendant had taught her to "touch herself." After about a year in foster care, P disclosed to her resource mother that defendant had sexually abused her.

When P made disclosures about defendant's sexual conduct with her, she was asked how often it happened. P answered, "lots," and also that it happened whenever defendant "needed it." She said that when defendant "needed it" his penis would be red.

At the OEC 104 hearing during the middle of trial outside the presence of the jury, the state called Cooper—P's maternal grandmother—to testify. Cooper recounted an occasion when she opened the door to the converted garage and saw defendant sitting on the bed masturbating while P played a few feet away next to the other side of the bed. P's attention was on a toy when Cooper saw her. Defendant was facing the door. He covered himself up when Cooper opened the door.

The state argued that the evidence was relevant to defendant's intent, sexual purpose, "identity,"[3] and "opportunity," by which it explained that it meant this was evidence that defendant could achieve and maintain an erection with his four-year-old daughter a few feet away.

The trial court ruled that the evidence was relevant under OEC 401 for purposes permitted under OEC 404(4)

---

[3] The state explained that, by "identity" it meant that it was evidence that P had seen defendant's penis and could recognize it. The state does not rely on that theory on appeal.

and OEC 404(3). The court conducted separate balancing for the propensity and nonpropensity theories it identified.

The court described the relevance of the evidence: "We are hearing about a man who is touching himself, stimulating himself in the presence of an awake child who is the alleged victim who has disclosed sexual abuse by this man during the same exact time period in the same room." The court concluded that the evidence was relevant to defendant's sexual interest in children, which it identified as an OEC 404(4)—that is, a propensity—theory of relevance. It also identified two OEC 404(3) theories: identity and opportunity.

The court, considering the probative value and potential prejudicial effect, first addressed the OEC 403 balancing for the OEC 404(4) propensity theory:

> "So I think the first question I need to answer in this inquiry is whether or not an incident described by Ms. Cooper is relevant under OEC 401 and 404, subsection 4.
>
> "* * * * *
>
> "This evidence, I think, in addition to the very clear poor parenting decisions, demonstrates [defendant's] lack of sexual boundaries around his child, [P]. It also shows [defendant's] capacity to become sexually aroused in the presence of his own child, as well as having an interest in sexual gratification while in the presence of his own child.
>
> "The Defendant's sexual purpose is an element of the crimes he's currently charged with and standing trial for. I will note that most people without a sexual interest in children would have sent the child out of the room or gone into a bathroom or a closet or in the most high risk circumstances maybe waited until the child's attention was completely diverted by a video or something of that nature, but it was clear under the evidence that the child's attention was not diverted in that way.
>
> "And so in sum total the evidence and the reasonable inferences that can be drawn from it do tend to make it more probable that the Defendant had a sexual purpose if and when he committed the charged act. And so it does meet in my opinion the relevant tests that it's subjected to."

Although the court initially ruled that the evidence was also admissible under OEC 404(3), it said that it would limit how the jury might use the evidence by giving a limiting instruction. The court explained that it intended to instruct the jury that it could "consider the evidence only for the purpose of determining whether or not [defendant] had a sexual interest in children and not as evidence—not as making it more likely that he committed the crimes in question."

Immediately after Cooper testified about walking in on defendant masturbating with P in the room, awake and active, the trial court instructed the jury:

> "So, I have a legal instruction for you, and you must follow it. You may consider Ms. Cooper's testimony about the incident that she has just testified to where she said that she saw [defendant] masturbating in the room with his child present for the purpose of determining whether or not [defendant] has a sexual interest in children. You may not consider the testimony as evidence tending to make it more likely that he committed the acts that he has been charged with and for which he is standing trial here."

The use of the evidence that the court permitted, determining whether defendant had a sexual interest in children, is an OEC 404(4), propensity, purpose. The court did not allow the jury to consider the evidence for any other purpose.

We review a trial court's determination of relevance under OEC 401 for errors of law. *State v. Titus*, 328 Or 475, 481, 982 P2d 1133 (1999). Likewise, we review a trial court's determination that other-acts evidence is relevant and admissible for a permissible purpose under OEC 404(3) or OEC 404(4) for legal error. *State v. Baughman*, 361 Or 386, 406, 393 P3d 1132 (2017), *abrogation on other grounds recognized by State v. Jackson*, 368 Or 705, 721-28, 498 P3d 788 (2021). Whether otherwise admissible evidence should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice under OEC 403 is reviewed for abuse of discretion. *State v. Cox*, 337 Or 477, 487, 98 P3d 1103 (2004), *cert den*, 546 US 830 (2005); *State v. Travis*, 320 Or App 460, 461-62, 513 P3d 614 (2022). Our review is limited to the record that was before the trial court at the time that it made its ruling. *See, e.g.*, *State v. Warren*,

291 Or App 496, 510, 422 P3d 282, *rev den*, 363 Or 744 (2018) (so observing).

OEC 404(4) provides:

"In criminal actions, evidence of other crimes, wrongs or acts by the defendant is admissible if relevant except as otherwise provided by

"(a) [OEC 406 through 412] and, to the extent required by the United States Constitution or the Oregon Constitution, [OEC 403];

"(b)  The rules of evidence relating to privilege and hearsay;

"(c)  The Oregon Constitution; and

"(d)  The United States Constitution."

That rule provides an exception to the general rule, OEC 404(3), prohibiting the use of specific instances of conduct to prove a person's character and that the person acted in conformity with their character. *State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015).

When a trial court is faced with determining whether other-acts evidence is admissible, it should determine whether the evidence is relevant for one or more non-propensity purposes under OEC 404(3). *Travis*, 320 Or App at 465-66. If it is relevant for an OEC 404(3) purpose, then the court should determine whether the probative value of that evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. *Id*. Separately, if the trial court determines that the evidence is relevant for a propensity purpose under OEC 404(4), it must then assess whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under OEC 403. *Id*. (discussing *Baughman*, 361 Or at 404-05).

Inherent in the *Baughman* analysis "and paying respect to the admonition about the likely low probative value and probable severity of unfair prejudice for purely character evidence expressed in *Williams*, is the recognition that OEC 403 balancing is dependent on the purpose for which the other acts evidence is offered." *Travis*, 320 Or App at 466. The two-step analysis set out in *Baughman* "helps

ensure that the purpose-focused balancing is not clouded by aggregating probative value under OEC 404(3) and OEC 404(4) or the danger of unfair prejudice from the evidence admitted under those two very different analyses." *Travis*, 320 Or App at 466.

Here, the court determined that the evidence was relevant to defendant's sexual interest in children, which it understood to be a propensity theory. *See State v. Williams*, 357 Or 1, 15, 346 P3d 455 (2015). It considered the probative value, given that the state had to prove defendant's sexual purpose, and it discussed the danger of unfair prejudice, describing what conclusions the jury might draw from the evidence. A factfinder could infer from the masturbation evidence, combined with other evidence at trial, that defendant chose to engage in sexual conduct with P present because he had a sexual interest in children, and that that conduct was for the purpose of his own sexual gratification. *See State v. Champagne*, 325 Or App 76, 83, 527 P3d 1067 (2023) (concluding that evidence of the defendant's prior sexual abuse crimes was admissible considering the factors discussed in *United States v. LeMay*, 260 F3d 1018, 1028 (9th Cir 2001), *cert den*, 534 US 1166 (2002)); *State v. Powers*, 323 Or App 553, 567-68, 523 P3d 1112 (2023) (same).

Defendant argues that the trial court conducted its analysis in the wrong order, compared with the method set out in *Baughman* that theories of relevance concerning a defendant's sexual purpose are not relevant when the defendant has denied that the conduct happened at all, and that the trial court erred in admitting the evidence. We reject those arguments. Although *Baughman* sets out a process a trial court should follow to determine whether evidence of prior acts is relevant and admissible for permissible purposes under OEC 404(3) and OEC 404(4), a failure to follow the exact order of that process is not, by itself, error. It may be clearer to proceed in the order prescribed, but when, as here, the court clearly identifies a permissible propensity theory of relevance, and conducts separate balancing for that propensity purpose, that is not error.

In our view, the trial court recognized that the sexual interest in children theory was a propensity theory

under *Williams*. Specifically, the trial court analyzed the logical relevance and probative value of the evidence as propensity evidence, and it engaged in OEC 403 balancing separately from the nonpropensity theories it considered.

The trial court recognized that the state had a need for the evidence, because it had to prove, as one of the elements of the crimes, that defendant acted for purposes of sexual gratification.[4] Although defendant argued to the trial court, and renews the argument on appeal, that that element was "not at issue" because defendant denied that the acts occurred at all, that argument fails to account for the state's burden at trial. The state had the burden of proving each element of the crimes beyond a reasonable doubt, regardless of defendant's theory of the case and the elements on which the defense was focused. *Cf. State v. Hess*, 342 Or 647, 664, 159 P3d 309 (2007) (explaining that "when a defendant makes a judicial admission to a material fact *** the state must demonstrate that the rules of evidence support the admission of evidence subsequently offered to prove the judicially admitted fact"). That is, even if defendant had offered to stipulate that he acted with a sexual purpose, a proposed stipulation as an alternative form of proof does not render other evidence proving that element irrelevant. *See State v. Sparks*, 336 Or 298, 308, 83 P3d 304, *cert den*, 543 US 893 (2004) (concluding that "the mere availability of defendant's offered stipulation as an alternate form of proof did not render" post-mortem photographs of the victim irrelevant). As discussed, the trial court considered the character inferences that the jury might draw from the evidence. Further, in conducting its balancing, the court crafted an instruction that limited the jury's consideration of the evidence strictly to determining whether defendant had a sexual interest in children, which is a permitted propensity use according to *Williams*. The trial court did not abuse its discretion when it engaged in OEC 403 balancing of the evidence and determined that it was admissible.

---

[4] Defendant was charged with first-degree sexual abuse, which required the state to prove that defendant had subjected the victim to "sexual contact," which is defined as "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party." *See* ORS 163.305(6) (defining "sexual contact").

The state argues that we need not consider whether the trial court erred by ruling that the evidence was admissible under OEC 404(3) for the nonpropensity theories of "identity" and "opportunity" because the court did not actually admit the evidence for those purposes. We agree. In light of its limiting instruction, the court did not actually admit the evidence for those purposes.

In short, the trial court did not err in admitting evidence of uncharged conduct that defendant had engaged in, when the court correctly concluded that the evidence was logically relevant for a permissible propensity purpose, it appropriately balanced the probative value against the danger of unfair prejudice, and it gave a limiting instruction that restricted the jury's use of the evidence specifically to the permissible purpose.

Convictions on Counts 3 and 4 reversed and remanded; remanded for resentencing; otherwise affirmed.